# Bolling & Son *v* LeGrand.

*Action on Bill of Exchange of Corporation, against Corporator as Partner.*

1. *Private industrial corporation; declaration and certificate of incorporation; constitutional provisions as to title and subject-matter of laws, and as to amendatory laws.*—Under the statutory provisions which were of force in May, 1886, relating to the incorporation of private industrial enterprises (Sess. Acts 1882-3, pp. 5, 40; Code, 1876, §§ 1803-07), the board of corporators, on the completion of the organization of the company, the payment "in cash of at least twenty per cent. of the capital subscribed payable in money, and the payment of the remainder of the capital so subscribed, payable in money, being secured to be paid in such installments and at such times as may be provided in the written declaration required by section 1803 of the Code," and also the delivery of twenty per cent. of the property subscribed, "with security for the

[Bolling & Son v. LeGrard.]

delivery of the remainder so subscribed, as may be promised [provided] by said written declaration required by section 1803," were authorized to certify these facts to the probate judge of the proper county, who thereupon issued to them a certificate of incorporation; but these provisions did not require that the board of corporators should, in the written declaration required by said section 1803, specify when or how the unpaid portion of the subscribed capital was secured to be paid, nor make the failure to do so a defect fatal to the incorporation; and to give them that construction would be to make them amendatory of said section 1803, in violation of constitutional provisions (Art. IV, § 2).

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. JOHN P. HUBBARD.

This action was brought by R. E. Bolling & Son, suing as partners, against M. P. LeGrand; was commenced on the 18th December, 1888, and was founded on a bill of exchange for $2,664.05, which, as described in the complaint, was drawn on the 1st June, 1887, by the Southern Railway Construction and Land Company, upon C. W. Scofield, as president of said company, and also as president of the Montgomery & Florida Railway Company, and by him accepted as president, payable to R. B. McKenzie, sixty days after date; which bill, before maturity, was indorsed to the plaintiffs. The first count alleged that, "at the time of said acceptance, said Southern Railway Construction and Land Company was a partnership, or voluntary association; that said Scofield and this defendant, with others, were members thereof, and that defendant is liable on said bill as such partner, or member of said association." The second count alleged that the Southern Railway Construction and Land Company "was never organized as a corporation under the laws of Alabama, but was, at the time of said acceptance, a partnership; that said Scofield and said defendant, with others, were at that time members thereof; that said acceptance was within the scope and authority of said partnership, and that defendant is liable on said bill as such partner."

The defendant filed two pleas, the first of which was a special plea of *non est factum*, setting out all the proceedings had in the matter of the incorporation of the Southern Railway Construction and Land Company, of which defendant was a director and stockholder; alleging that the bill of exchange was made by said corporation after its organization, and while it was doing business as such, and that he "never made, nor authorized any one else to make for him the said bill of exchange, and, save as stockholder and director as aforesaid, had no connection with, or interest in said company." The second plea, after repeating the facts connected

[Bolling & Son v. LeGrand.]

with the incorporation of the company, alleged that said Mc-
Kenzie made a written contract with said corporation for the
performance of certain work in building a railroad, for the
construction of which the corporation had contracted; that
the corporation became thereby indebted to him, and exe-
cuted said bill of exchange in part payment of said indebted-
ness; and that said McKenzie, in making said contract, and
in receiving said bill of exchange, "dealt with said company
as a corporation, and not otherwise."

All the proceedings in connection with the incorporation of
the company, copies of which were made exhibits to the pleas,
were had in May, 1886.    The declaration was filed on the
24th May, and contained these statements: "We do hereby
declare in writing: (1.) That the names and residences of
your corporators and declarants are, C. W. Scofield, of the
city of New York; M. P. Le Grand and Jas. A. Farley, of
Montgomery, Alabama; and John D. Roquemore, of Eufaula,
Alabama.    (2.) That the name of said corporation shall be,
the *Southern Railway Construction and Land Company;*
that its principal place of business shall be at Montgomery,
Alabama; that the general purpose of said corporation shall
be the construction of railroads, and the purchasing, owning,
selling, improving, and dealing in lands.    (3.) That the
capital stock of said corporation shall be $10,000, to be di-
vided into one hundred shares, of the par value of $100 each.
(4.) That said corporation shall have the power to purchase,
own, sell, and deal generally in real estate; to improve the
same, and to sublet any contract it may have for the con-
struction of railroads."    On the filing of this declaration, a
commission was issued by the probate judge of Montgomery
to said Le Grand and Roquemore, authorizing them to open
books of subscription, on one day's notice through the news-
papers.    The books were opened on the 26th May, and fifty
shares subscribed for by the corporators, $5,000, of which
twenty per cent. ($1,000) was paid in cash; and these facts
being certified to the probate judge, with the election of
officers, he issued a certificate of incorporation on the same
day.

The plaintiffs' demurred to each of the defendant's pleas,
and the judgment overruling their demurrers is now as-
signed as error.

E. P. MORRISSETT, for appellants.—(1.) If the Southern
Railway Construction and Land Company was never legally

incorporated, never had a legal existence, its individual stock-holders or members are liable as partners on its contracts and engagements.—Wordsworth on Joint Stock Companies, 3; Cooke on Stock and Stockholders, § 233; Angell & Ames on Corporations, §§ 591–2; Waite on Insolv. Corp., § 477; Story on Partnership, 109; 7 Wendell, 542; 73 Ill. 197; 16 La. Ann. 153; *Hill v. Beach*, 12 N. J. Eq. 31; 36 N. J. Law, 250. *Fay v. Noble*, 7 Cush. (Mass.), asserts a contrary doctrine, and it is adopted by Morawetz; but that decision is founded on the false reason, as assigned, that to hold them liable as partners would be holding them "to a liability neither contemplated nor assented to by them." The liability of a party is determined by his acts, and the resulting implications, not by his intentions. A contract which the parties intended to make, but did not make, can not be set up in place of one which they did make.—*Sanford v. Howard*, 29 Ala. 684. An agent, or trustee, may bind himself personally, although that was not his intention.—*McCalley v. Wilburn & Co.*, 77 Ala. 552; and many other authorities. (2.) Said company was never legally organized as a corporation. The proceedings relied on as an incorporation show that the capital stock was to be $10,000, of which $5,000 was subscribed by the corporators, but only twenty per cent. ($1,000) was paid in; and that no security was given for the payment of the residue. Under the statutory provisions then of force, it was not only required that twenty per cent. of the capital subscribed for, payable in money, should be paid in cash, but that security should be given for the payment of the balance; and the declaration of incorporation was required to state how this unpaid balance was secured to be paid—in what installments, when, and how payable; and this was a condition precedent to a valid incorporation.—Sess. Acts 1882–3, p. 40. Any other construction of the amendatory law would render it useless and nugatory, since the persons proposing to form a private corporation, limiting their liability to their unpaid subscriptions, already had the option of specifying, in their declaration of incorporation, how their unpaid subscriptions, whether of money or property, should be paid or discharged; and they needed no additional legislation in this regard. They already had the power to specify in their written declaration, under subdivision 4, "any other matters which it may be desirable to set forth in the organic law"; and it is not to be supposed that it would be desirable to them to incur any other or

[Bolling & Son v. LeGrand.]

further liability than was compulsory. The General Assembly, it is to be presumed, did not enact a special statute which no one needed, and which accomplished nothing after its enactment. On the contrary, the amendatory law was enacted in the interest of third persons—to protect the unwary public against possible imposition and fraud, on the part of those who would induce confidence and secure credit by a pretense of specious capital, seeking corporate privileges while limiting their personal liability; to check the abuse of the loose system of incorporation then existing, by requiring not only payment in cash of one-tenth of the proposed capital stock, but security for the payment of the balance. This construction only can give any effect to the new law.—Dwar. Statutes, 702-7; Sedgw. St. & Const. Law, 245-6; 41 Ala. 479; 59 Ala. 219; 68 Ala. 317. That the word *may*, in a statute, is to be construed as mandatory when the rights and interests of the public are concerned, see *Ex parte Banks*, 28 Ala. 35; 17 Ala. 527; 9 Porter, 390; 3 Atk. 166; 2 Bouv. Dic. 150. (3.) This construction of the statute can not be assailed on constitutional grounds. Sections 1803 and 1807, as well as the intermediate sections, relate to the same subject, and are closely connected, and they are to be construed as *in pari materia*. The constitutional inhibition is against the insertion of matters foreign to the main object of the bill—matters not easily discerned by reading the law, or which might operate a surprise or fraud on legislators. Its requirements are not to be exactingly enforced, nor in such manner as to cripple legislation, or obstruct the machinery of government.—*Ballentyne v. Wickersham*, 75 Ala. 533; *Moses v. Mayor*, 52 Ala. 198; *Falconer v. Robinson*, 46 Ala. 340; 82 Ala. 211; 44 Ala. 639. (4.) The plaintiffs are not estopped from asserting that the company never had a corporate existence, and holding the defendant liable as a partner.—*Chambers·v. Falkner*, 65 Ala. 448; 36 Ala. 313; 31 Ala. 76; 46 Md. 373; 73 Ill. 201; 56 Iowa, 109; Waite's Insolv. Corp. 34, § 23.

SAYRE, STRINGFELLOW & LE GRAND, TOMPKINS & TROY, and ROQUEMORE, WHITE & LONG, *contra*.—(1.) The appellants' construction of the statute amending section 1807 of the Code of 1876, not only does violence to the words used, but perverts the meaning and purpose of the statute, and would make it accomplish by implication what could not have been done expressly and directly without a violation of

mandatory constitutional provisions. Sections 1803 and 1807 relate to the same general subject, and both of them, possibly, might have been modified, or even repealed, by a general affirmative statute which did not mention either of them. But an act which, by its title, purports "to amend section 1807," could not include also an amendment of section 1803; and yet the argument is that it does this by implication, and by reference only to the number of that section.—Const., Art. IV, § 2; *Dane v. McArthur*, 57 Ala. 448; *Ballentyne v. Wickersham*, 75 Ala. 533; *Rogers v. Torbut*, 58 Ala. 523; *Todd v. State*, 85 Ala. 339; 82 Ala. 209, 339; 41 Ala. 9; 43 Ala. 224; 46 Ala. 348; 49 Ala. 349. The provision in the statute was not intended for the benefit of the public; for the nature of the security is not specified, but is left discretionary with the corporators themselves, for whose benefit it was intended; and when they deem it desirable to specify the security, the installments, &c., in their declaration of incorporation, then it must be certified by them to the probate judge.   (2.)  The declaration in this case, it is admitted, complied strictly with the requirements of section 1803 of the Code, as then amended; and that, it is insisted, in connection with the certificate of the probate judge, gave it a corporate existence.    But, even if there was a defect in the organization or incorporation of said company, the plaintiffs can not take advantage of it in this action.—*Lehman, Durr & Co. v. Warner*, 61 Ala. 455; *Agr. & Mech. Asso. v. Insurance Co.*, 70 Ala. 120; *Sherwood v. Alvis*, 83 Ala. 115; *Savings Bank v. Dunklin*, 54 Ala. 471; *Sprowl v. Lawrence*, 38 Ala. 690; *Duke v. Cahaba Nav. Co.*, 16 Ala. 372; *Railroad Co. v. Tipton*, 5 Ala. 808; 32 Md. 671; 19 N. Y. 482; 25 N. Y. 208; 26 N. Y. 75; 57 N. Y. 331; 12 Heisk. (Tenn.) 494; 38 Mich. 776; 69 Geo. 159; 35 Ohio St. 158; 58 Penn. St. 399; 62 Mo. 247; 95 U. S. 665; Mor. Corp., § 748; 12 Wall. 358; 51 Ind. 60; 89 Ind. 389; 32 Wisc. 162; 113 Ill. 618; 12 Amer. & Eng. Corp. Cases, 40.

McCLELLAN, J.—The theory upon which this suit was instituted, and this appeal prosecuted, is, that the efforts of the defendant below—appellee here—and others acting with him, to organize a corporation, were so far abortive that the would-be corporators, instead of forming a body corporate, in law and fact constituted a partnership, or voluntary association of individuals, and as individuals became bound on the contracts purporting to be made by the corporation and

in its name. Two defenses were relied on in the court below: First, that the corporation, whose existence as such is thus attempted to be impeached, was duly and regularly organized, and is alone liable on the contract sued on; and, second, that this contract was made with it as a corporation, and the plaintiff is now estopped to deny its corporate existence and capacity. Manifestly, the consideration of this second defense will be important only in the event that it shall be determined that there was a failure on the part of the declarants to attain corporate existence, and that question will be first considered.

The infirmity in the proceedings had and taken by and at the instance of the defendant and his associates, which is relied on as defeating their purpose to organize a corporation, is alleged to result from non-compliance with two acts of the General Assembly passed at the session of 1882–3, amending respectively sections 1803 and 1804 and section 1807 of the Code of 1876.

By an act of December 6, 1882, sections 1803 and 1804 of the Code of 1876 were amended so as to read as follows, respectively:

"§ 1803. *Declaration filed with Probate Court; contents.*—Two or more persons desiring to form themselves into a private corporation, for the purpose of carrying on any manufacturing, mining, immigrating, industrial or other lawful business, not otherwise specifically provided for by law, may file with the Probate Court of the county, in which it is proposed that such company shall have its only or principal place of business, a written declaration, signed by themselves, setting forth:—

"1. The names and residences of the petitioners.

"2. The name of the proposed corporation, the place at which it proposes to have its principal or only place of business, the general purpose of the corporation, and the nature of the business which it proposes to do.

"3. The amount of the capital stock, and the number of shares into which it is to be divided, showing the par value of each share.

"4. Any other matter which it may be desirable to set forth in the organic law.

"§ 1804. *Commission issued to board of corporators; books of subscription; when and where opened.* Upon the filing of the declaration as above, the probate judge of the county shall issue to the parties, or to any two or more of

them, a commission constituting them a board of corporators, giving them authority to open books of subscription to the capital stock of the proposed company, at such time and place as they deem fit."

By an act "to amend section 1807 of the Code," approved February 5, 1883, that section was made to read as follows:

"§ 1807.    *Certificate of organization.*—Upon the completion of the organization of the company, and the payment to the treasurer of the company, or some officer designated for that purpose, in cash, of at least twenty per cent. of the capital subscribed, *payable in money, and the payment of the remainder of the capital so subscribed for, payable in money, being secured to be paid in such installments and at such times as may be provided in the written declaration required by section 1803 of the Code; and also the delivery to such officer of at least twenty per cent. of the property so subscribed to the capital of such corporation, with security for the delivery of the remainder of said property, so subscribed to the capital as may be promised by said written declaration required by section 1803*; the board of corporators shall, in writing, over their signatures, certify the same to the probate judge of the county, who shall issue to the company a certificate that they have been fully organized according to the law of Alabama, under the name and for the purpose indicated in their written declaration, and that they are fully authorized to commence business under their charter."

By the first of the acts copied above, section 1803 of the Code of 1876 was amended by inserting the words, *"or other lawful business, not otherwise specifically provided for by law"*; and section 1804 was amended so as to take away from the probate judge the power and duty of requiring the board of corporators to give such notice of the time and place of opening the books of subscription, as he might deem fit, and, in lieu thereof, require that officer to authorize the corporators to open books for subscription "at such time and place as they deem fit."    The amendment of section 1807 of the Code attempted to be made by the second statute set out, is indicated by the italization in the body of the act as quoted.

While the statutes were in force, and with the unamended sections of Article 1, Chapter 1, Title 1, Part Second of the Code of 1876, constituted the law under which certain classes of corporations were required to be organized,

the defendant in this action, with others, undertook to organize a corporation to be called "The Southern Railway Construction and Land Company," and to that end filed in the office of the judge of probate of Montgomery county, where it was proposed the said company should have its principal or only place of business, a declaration in strict compliance with the statute quoted first above, amendatory of section 1803, and setting forth, under clause 4 of that section, "that said corporation shall have the power to purchase, own, sell and deal generally in real estate, to improve the same, and to sublet any contract it may have for the construction of railroads." This declaration nowhere attempts to provide for, or specify the installments, in which that part of the capital stock of the proposed corporation which is not paid in cash, shall be paid, nor the times at which deferred installments shall be paid, nor does it provide for or require any kind of security for the payment of deferred installments; and in point of fact, no other security than the individual obligation of each subscriber to the stock of the company, evidenced by their respective subscriptions, was ever required or given, for the payment of that part of the money subscribed which was not paid on organization. It is clear, that neither the original section 1803, nor as it was amended by the act of December 6, 1882, above set out, required that the declaration of persons desiring to form themselves into a private corporation should state the installments into which subscriptions should be divided, nor the time at which subscriptions should be paid, nor prescribe that any security should be given for the payment of subscriptions in whole, or in any part or parts, presently, or at any time or times in the future. The original section 1804 required that twenty per cent. of the capital subscribed should be paid in, and the fact certified to the judge of probate, before it became the duty of that officer to issue a certificate of organization; and it appears that this provision was complied with in the present case.

This section, as amended by the act of February 5, 1883, refers also to the eighty per cent. of the subscribed capital stock which is not required to be paid in before certification of organization, and makes the fact of that part of the capital "being secured to be paid in such installments and at such times as may be provided in the written declaration required by section 1803," one of the conditions upon which arises

the duty of the probate judge to certify the organization of the company, and that it is fully authorized to commence business under its charter. This provision of the amendatory act is susceptible of two constructions. The legislature may have intended thereby to require that the declaration for the formation of the corporation should set forth the installments into which the unpaid capital should be divided, and the times at which such installments should be paid, and that the fact that the deferred capital had been secured to be paid in the installments, and at the times therein indicated, should be certified to the probate judge in all cases, before he should authorize the corporation to commence business. On the other hand, recognizing that section 1803 already contained a clause under which corporators, if they desired so to do, might provide in their declaration that the deferred subscriptions should be paid in certain amounts, and at stated times, it may have been the legislative purpose to provide a method by which the declared intent of the corporators could be effectuated, by requiring security to be given for the payment in all cases in which the corporators had availed themselves of the right to prescribe the time and amounts of such payments. It is patent that the former interpretation involves the interpolation of a new provision into section 1803—injects into it a requirement that the declaration should set forth, in addition to what the section itself provides, the further statement, that that part of the capital stock not paid up on organization, should be paid in certain installments, and at certain times. To thus amend section 1803 would, in our judgment, violate at least two provisions of the organic law. Section 2, Art. IV of the Constitution, among other things, provides, that "Each law shall contain but one subject-matter, which shall be clearly expressed in its title." If the act of February 5, 1883, with its title to amend section 1807 of the Code, be construed to inject the new provision into section 1803, which we have been considering, it clearly contains two subjects-matter, one of which—the amendment of section 1807—is expressed in the title, and the other—the amendment of 1803—is in no manner expressed, or even indicated in the title. The reading of this act by its title, as the Constitution requires it to be read, in each house of the General Assembly, would have given to the members of that body no information of its real contents, or intimation that its purpose was to amend section 1803, as well as 1807 of the Code. To construe it to have

[Bolling & Son v. LeGrand.]

that effect, brings it within both the letter and spirit of the constitutional inhibition.—*Ballentyne v. Wickersham*, 75 Ala. 533, and cases cited; *Ex parte Reynolds*, *ante*, p. 138, and cases cited; *Chiles v. Monroe*, 4 Met. (Ky.) 72.

Another clause of the section quoted from above provides, that "No law shall be revised, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published , at length." Giving to the act of February 5, 1883, the effect of amending section 1803 in the particular indicated, the result would be to amend or extend that section, in a matter the importance of which this case fully attests, by a bare reference to an arbitrary number, which has been attached to it for the purpose of physical identification, and which fails absolutely to give any information or hint of its contents, and with no pretense of re-enacting the section and publishing it at length as amended. Such an amendment is clearly within the inhibition of the constitution last quoted, as expounded in the former adjudications of this court.—*Rodgers v. Torbut*, 58 Ala. 523; *Stewart v. County Commissioners*, 82 Ala. 209; *Bay Shell Road Co. v. O'Donnell*, *ante*, p. 376 ; *Ex parte Reynolds*, *ante*, p. 138.

Having thus reached the conclusion, that to adopt the construction of the act of February 5, 1883, contended for by appellants, would render it unconstitutional, it becomes the duty of courts to give to that statute, if it can be done consistently with its terms, an interpretation which will leave it a field of operation within constitutional limitations. *Wilburn v. McCalley*, 63 Ala. 436. This result may be attained by adopting the construction indicated above, and holding it to have been the purpose of the General Assembly. as gathered from the language employed, and hence to be the effect of this act, to require unpaid subscriptions to be secured to be paid in certain installments and at certain times, in those cases only in which the corporators have declared, under clause 4 of section 1803, that that part of the subscribed capital which is not paid on organization shall be paid in stated amounts and at particular times. Indeed, the particular expression used in the act of 1883, aside from any other consideration, tends strongly to support this conclusion. It is there provided, that certification of organization shall be made upon the payment of at least twenty per cent. of the capital subscribed, and upon the remainder

[McDowell v. Steele.]

being secured to be paid in such manner &c. as *may be* provided in the declaration. There is nothing to indicate a legislative purpose to require that such provision should be made, or that security should be given in the absence of any provision for amounts and times of payments; but, in recognition of the discretion left in the corporators to set out a provision of this character, or not to do so, the operation of this amendment of section 1807 is upon a provision in this behalf resulting from the voluntary election of the corporators to include and set it forth in their declaration. As we have seen, there is no such declaration filed for the incorporation of the Southern Railway Construction and Land Company, but, on the contrary, the declarants conceived it "to be desirable to set forth," under the fourth clause of section 1803, other matters, having reference to the general powers of the company.

Our conclusion is, that the corporation was regularly organized, and is alone liable on the contract sued on in this case. This renders it unnecessary to consider the question of estoppel.

Affirmed.