[No. 2947. Dec. 31, 1924.]

## STATE v. ARMSTRONG.

[243 Pac. 333.]

### SYLLABUS BY THE COURT

1. The following portion of the title to chapter 118 of the Laws of 1923, to-wit, "An act to enforce the provisions of article 18, of the amendments to the Constitution of the United States, prohibiting all acts or omissions prohibited by the National Prohibition Act, imposing duties on courts, prosecuting attorneys, sheriffs and other officers and extending their jurisdiction," expresses the subject of that enactment with sufficient clearness to comply with the requirements of section 19 of article 4 of the Constitution of New Mexico, which provides that the subject of every bill shall be clearly expressed in its title.

---

[1] 36Cyc pp. 1017 n. 78; 1019 n. 88; 1030 n. 30; 1032 n. 37; 1051 n. 27 [2, 3] 36Cyc pp. 948 n. 83 New; 970 n. 94. [4, 5] 36Cyc p. 970 n. 96 New. [6, 7] 22CJ pp. 148 n. 67; 149 n. 68; 36 Cyc pp. 965 n. 70; 1196 n. 41; 1197 n. 46; 1199 n. 69. [8] 12CJ pp. 776 n. 43; 794 n. 23; 36Cyc p. 970 n. 96 New. [9] 36 Cyc p. 970 n. 96 New.

2. In the absence of a constitutional provision so forbidding, one statute may adopt specific provisions of another by a descriptive and specific reference thereto; the effect being as if so much of the adopted act as is so referred to and adopted had been copied therein.

3. Chapter 118, Laws 1923, is a "reference statute" and the declaratory portion thereof is sufficient to meet the requirements of section 15, art. 4, of the Constitution of New Mexico, which provides that "no law shall be passed except by a bill."

4. Chapter 118 of the Laws of 1923 does not, in adopting certain provisions from the National Prohibition Act (U. S. Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) by reference only, without setting them out in full, purport to extend or enlarge or otherwise change the National Prohibition Act, and is not in conflict with section 18 of article 4 of the Constitution of New Mexico, which provides that "no law shall be revised or amended, or the provisions thereof extended by reference to its title only; but each section thereof as revised, amended or extended shall be set out in full."

5. This constitutional provision applies to a previous law whose provisions are sought to be extended, and not to the provisions of the law being enacted.

6. Laws in this state become effective at fixed dates after the Legislature adjourns, or after their passage, whether published or not, and the publication of any law is not a condition precedent to its effective operation.

7. The requirement in section 12 of article 20 that laws be published in both English and Spanish relates to the publication of such laws in the form of their enactment.

8. Where a law in the form as enacted by the Legislature is enrolled and engrossed, and read publicly in full in each house, and deposited with the secretary of state, the constitutional requirements of section 20 and 22 of article 4 of the Constitution, relative thereto, are fully met.

## On Rehearing.

9. Section 1 and 2, c. 118, Laws 1923, attempting to adopt by reference the penal provisions of the National Prohibition Act (U. S. Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), as the law of this state, violate article 4, § 18 of the Constitution, in that they attempt to extend the provisions of that act by reference to its title only without setting the same out in full.

Appeal from District Court, Quay County.

Carl Armstrong was convicted under Laws 1923, c.

118, §§ 1, 2, and he appeals. Reversed and remanded, with directions, on rehearing.

O. O. Askren, of East Las Vegas, for appellant.

Milton J. Helmick, Atty. Gen., and John W. Armstrong, Asst. Atty. Gen., for the State.

### OPINION OF THE COURT

FORT, J. The appellant, Carl Armstrong, was charged by indictment with the possession of a still in violation of the provisions of title 2 of the National Prohibition Act (U. S. Comp. St. Ann. Supp. 1923, § 10138½ et seq.) and of chapter 118 of the Laws of New Mexico 1923 (hereinafter referred to as chapter 118). Upon arraignment he filed a motion to quash the indictment on the grounds that chapter 118 was unconstitutional and void in failing to define any crime or prescribe any punishment therefor. This motion was overruled, and upon the trial the defendant was convicted. The only errors alleged in the appeal from this conviction are in overruling the motion to quash the indictment.

In order to clearly understand the questions involved, it will be helpful to set out the title to chapter 118, and certain sections from the body of the act, as follows:

"An act to enforce the provisions of article 18, of the amendments to the Constitution of the United States; prohibiting all acts or omissions prohibited by the National Prohibition Act, imposing duties on courts, prosecuting attorneys, sheriffs and other officers and extending their jurisdiction; authorizing the seizure of intoxicating liquor and vehicles used for transportation or possession thereof in violation of law and providing for the disposition of such vehicle pending trial and for the sale of such vehicle and disposition of the proceeds thereof and protecting bona fide lien claimants thereto and providing for bringing into court the owners of property used for the illegal possession or transportation of intoxicating liquor other than defendants charged with such offenses and providing for the disposition of fines and forfeitures. * * * (blackface ours.)

"Section 1. New Mexico hereby recognizes the requirements of the Eighteenth Amendment to the Constitution of

the United States for its concurrent enforcement by the Congress and the several states. To that end, the penal provisions of the National Prohibition Act are hereby adopted as the law of this state; and the courts of this state are hereby vested with the jurisdiction, and the duty is hereby imposed upon all prosecuting attorneys, sheriffs, grand juries, magistrates, and peace officers in the state, to enforce the same.

"Section 2. All acts and omissions prohibited or declared unlawful by the Eighteenth Amendment to the Constitution of the United States or by the National Prohibition Act are hereby prohibited and declared unlawful and violations thereof are subject to the penalties provided in the National Prohibition Act."

"Sec. 3 New Mexico hereby recognizes that its power to enforce the Eighteenth Amendment to the Constitution of the United States should at all times be exercised in full concurrence with the exercise of the like power of Congress; and to that end, whenever Congress shall amend or repeal the National Prohibition Act, or enact any other law to enforce the Eighteenth Amendment to the Constitution of the United States, then the provisions of sections one and two of this act shall apply thereto.

"Sec. 4. [This section provides for the seizure of vehicles unlawfully transporting intoxicating liquor, and their confiscation and sale, and the disposition of the proceeds of the sale.]

"Sec. 5. [This section is a procedural requirement in connection with the proceedings outlined in section 4.]

"Sec. 6. Nothing in this act shall be construed as limiting the power of any city, town or village, to prohibit the manufacture, sale, transportation or possession of intoxicating liquors for beverage purposes; and all fines and forfeitures collected under any ordinance now or hereafter enacted in the exercise of such power shall be paid into the treasury of the city, town or village, whose ordinance is violated.

"Sec. 7. The phrase 'National Prohibition Act' as used herein is defined as title two of the act of Congress, enacted October 28, 1919; such title two being enacted under the authority of the Eighteenth Amendment to the Constitution of the United States and providing for the enforcement thereof.

"Sec. 8. Should any section or any portion of any section of this act be found unconstitutional, the remainder shall continue in full force and effect, it being expressly declared that such is the intention.

"Sec. 9. [This is the usual emergency clause..]

Chapter 118 was approved March 12, 1923. The itali-

cized portions of the title, and the sections above set out in full, were copied by our Legislature from a California statute adopted by the Legislature of that state in 1921 (St. 1921, p. 79) and afterwards approved by referendum vote, except that the words "Volstead Act" are used in the California law where "National Prohibition Act" are used in chapter 118. The California law was subsequently approved by the Supreme Court of that state as a valid and constitutional enactment, in the case of Ex parte Burke, 190 Cal. 326, 212 P. 193, decided on January 9, 1923, and prior to the adoption of chapter 118 by our Legislature.

Chapter 37 of the 1923 Laws of Nevada was adopted in February, 1923, by the Legislature of that state, similar in all respects to the California law, except an added repealing section, and the title, which is as follows:

"An act to make the provisions of the national prohibition act of the United States of America the law of the state of Nevada; and to repeal an act entitled 'An act to prohibit the manufacture, sale, keeping for sale, and gift, of malt, vinous and spirituous liquors and other intoxicating drinks, mixtures or preparations, making the superintendent of the Nevada state police ex officio commissioner of prohibition, and defining his duties; and provid ng for the enforcement of this act, and prescribing penalties for the violation thereof,' enacted pursuant to direct vote of the people, general election, November 5, 1918; and to repeal all acts in conflict herewith; and other matters connected therewith."

The Nevada statute was in the case of Ex parte Mantell (Nev.) 216 P. 509, declared unconstitutional, by a divided court, on July 3, 1923.

This method of defining crimes and offenses, and naming penalties by reference to a federal statute, is unique, if not unusual, and has met with serious criticism by those intrusted with the enforcement of the law, and the public generally, because of the difficulty in thus arriving at the meaning of these enactments. It is unquestionably true that a criminal statute should define the offenses therein created so clearly and specifically as to enable the public to understand the same with the least possible difficulty, and legislation clar-

ifying the provisions of chapter 118 would meet with general approval, but we must determine the validity of this statute, not by popular approval, but by the rules and principles of law applicable thereto.

[1] 1. One ground of constitutional objection urged is that the title to chapter 118 is insufficient to meet the requirements of section 16, art. 4, of the New Mexico Constitution that—

"The subject of every bill shall be clearly expressed in its title, and no bill embracing more than one subject shall be passed except general appropriation bills and bills for the codification or revision of the laws."

It is contended that the purpose of this constitutional requirement is that the legislators and the people may know the general scope of the proposed legislation from the perusal of the title alone, during the progress of its enactment, and that a title which attempts to name as its subject the enforcement of the Eighteenth Amendment of the Constitution of the United States without further designation and description, and the prohibition of all acts and omissions prohibited by the "National Prohibition Act" (U. S. Comp. St. Ann. Supp, 1923, §10138¼ et seq.), without any intimation of the nature of such acts and omissions, fails to satisfy the required purpose.

It is argued that the title to chapter 118 should be as full and descriptive as would be required to support a statute setting out in full provisions of "title 2" of the National Prohibition Act, without any reference in the body of such statute either to "title 2" or the National Prohibition Act, and that the words "title 2 of the act of Congress, enacted October 28, 1919," being the definition of the "National Prohibition Act" adopted in chapter 118, does not express a subject which can be expressed in its title by mere reference to the "National Prohibition Act." It is also argued that this constitutional provision requires that the title to a bill be a sufficient index to its provisions to enable the legislator or citizen to ascertain from the title alone the purpose of the proposed legislation,

without reading the body of the bill, or without reference to an extraneous document.

Originally the title was not considered a part of a legislative act, and the inclusion of diverse subjects in a single act was no objection to its validity. However, a careful examination of the Constitutions of all the states as contained in Kittleborough's "The State Constitutions," published in 1918, shows that there are provisions in the Constitutions of 40 of the 48 states similar in purpose to the one above quoted from ours.

Probably the simplest statement of this provision is in section 52, art. 4, of the Constitution of Virginia, which is that:

"No law shall embrace more than one object, which shall be expressed in its title."

Some of the provisions contain the word "object" for "subject." A number of them require that the "subject" or "object" be "clearly" expresed in the title, and one of them that it be "briefly" so expressed, and in New York and Wisconsin this requirement is limited to private or local bills. In none of the many decisions upon this question, however, is any material distinction made because of this diversity of expression.

The first constitutional provision requiring the subject of an act to be stated in its title was in section 17, art. 1, of the Georgia Constitution of 1798, and it was inserted therein at the instance of General James Jackson, who was at that time Governor of that state. Its necessity was suggested by the enactment by the Georgia Legislature of what was known as the "Yazoo Act," generally referred to as the "Yazoo Fraud," in regard to which Justice Lumpkin, in the case of Savannah v. State, 4 Ga. 26, at page 38 in his opinion, says:

"That memorable measure [The Yazoo Act] of the 17th of January, 1795, as is well known, was smuggled through the Legislature, under the caption of an act 'for the payment of the late state troops,' and a declaration in its title, of

the right of the state to the unappropriated territory thereof, 'for the protection and support of its frontier settlements'."

Its first object, the seems to have been to prevent fraud through legislation enacted under misleading titles, so "that neither the members of the Legislature, nor the public, should be misled by the title." Sun Mutual Ins. Co. v. Mayor of New York, 8 N. Y. 241. Later this provision was broadened to prevent another common legislative practice of uniting in the same act, incongruous matters having no mutual relation, which was also productive of bad legislation. This purpose is clearly expressed in paragraph 4, § 7, art. 4, of the New Jersey Constitution of 1844, in the following language:

"To avoid improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title."

The Constitution of Michigan (section 21, art. 5, of its present Constitution) provides that:

"No law shall embrace more than one object, which shall be expressed in its title."

The case of People v. Mahaney, 13 Mich. 481, is a leading and oft-quoted authority upon the construction of this and similar constitutional provisions. Judge Cooley, who wrote the opinion in that case, at page 494, says:

"The history and purpose of this constitutional provision are too well understood to require any elucidation at our hands. The practice of bringing together into one bill subjects diverse in their nature, and having no necessary connection, with a view to combine in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits was one both corruptive to the legislator and dangerous to the state. It was scarcely more so, however, than another practice, also intended to be remedied by this provision, by which, through dextrous management, clauses were inserted in bills of which the titles gave no intimation, and their passage secured through legislative bodies whose members were not generally aware of their intention and effect. There was no design in this clause to embarrass legislation by making laws unnecessarily restrictive in their scope and operation, and thus multiplying their number; but the

framers of the Constitution meant to put an end to legislation of the vicious character referred to, which was little less than a fraud upon the public, and to require that in every case the proposed measure should stand upon its own merits, and that the Legislature should be fairly satisfied of its design when required to pass upon it."

He was there discussing an' act with the following title:

"An act to establish a police government for the city of Detroit." Laws Mich. 1865, p. 99.

The validity of the act was upheld. His conclusion was as follows:

"But this purpose is fully accomplished when the law has but one general object, which is fairly indicated by its title.

There are a number of summaries of the purposes of this composite constitutional provision, from which we quote the following from 25 R. C. L. p. 835.

"The purposes of these constitutional provisions have been summarized as follows: (1) To prevent 'log-rolling' legislation; (2) to prevent surprise or fraud, in the Legislature by means of provisions in bills of which the titles give no intimation, and (3) to apprise the people of the subject of legislation under consideration."

See, also, Johnson v. Harrison, 47 Minn. 575, 50 N. W. 923, 28 Am. St. Rep. 382; 1 Lewis' Suth. Stat. Constr. § 111, p. 186; Cooley's Cons. Lim. (7th Ed.) p. 205.

As to the general rules of construction, see 25 R. C. L. p. 837, § 85, from which we quote the following:

"This limitation of the exercise of the legislative power in the enactment of laws is not exempt from the general rule that it is only a clear violation of the constitution which will justify the courts in overruling the legislative will. Every legislative act is presumed to be constitutional, and every intendment must be indulged by the courts in favor of its validity. The limitation must be liberally construed with a view to upholding legislation. The objection should be grave, and the conflict between the statute and the Constitution palpable, before the judiciary should disregard a legislative enactment upon the ground that it embraces more than one subject or object, or, if it embraces but one subject or object, that it is not sufficiently expressed by the title. Where after having applied the

general principles governing the construction of constitutional provisions, a court is still in doubt as to the constitutionality of an act, it should sustain the same."

See, also, 1 Lewis' Suth. Stat. Const. (2d Ed.) § 115.

As to the sufficiency of the title, it has been said:

"If the title fairly indicates the general subject, and reasonably covers all the provisions of the act, and is not calculated to mislead the Legislature or the people, it is sufficient." Davis v. State, 7 Md. 151, 61 Am. Dec. 331, 334.

"The generality of the title of a statute constitutes no constitutional objection to its validity." Crookston v. Board of Comm'rs, 79 Minn. 283, 82 N. W. 586, 79 Am. St. Rep. 453: Bobel v. People, 173 Ill. 19, 50 N. E. 322, 64 Am. St. Rep. 64; Neuendorff v. Duryea, 69 N. Y. 557, 25 Am. St. Rep. 235.

See, also, extensive case notes to the last four cases above cited.

In the case of State w. Ingalls, 18 N. M. 211, 135 P. 1177, our court held that the true test of the validity of a statute under this constitutional provision was "Whether the title gives reasonable notice of the subject matter itself." and also that "The generality of a title to an act * * * is no objection * * * so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be construed as having a necessary or proper connection."

The title to an act "is sufficient if the language used in the title, on a fair construction, indicates the purpose of the Legislature to legislate according to the constitutional provision, so that, making every reasonable intendment in favor of the act, it may be said that the subject or object of the law is expressed in the title." 1 Lewis' Suth. Stat. Constr. (2d Ed.) § 121.

It is sufficient in an amendatory act to identify the original act by its title and declare the purpose to amend it. 1 Lewis' Suth. Stat. Constr. (2d Ed.) § 137. In amending a Code or revision, it is generally held that it is sufficient to specify the section to be amended

without giving the title to the chapter or division, though there are decisions to the contrary.

In New York and Indiana it is held otherwise, and in the case of New York v. Manhattan Ry. Co., 143 N. Y. 1, 37 N. E. 494, the title, "An act, supplementary to chapter 489 of the Laws of 1868," and in O'Mara v. Wabash Ry. Co., 150 Ind. 648, 50 N. E. 821, the title, "An act to amend section 640 of the Revised Statutes of 1881," were held to express no subject. So also the Supreme Court of Washington, though having formerly held otherwise, in the later case of State v. Superior Court, 28 Wash. 317, 68 P. 957, 92 Am. St. Rep. 831, says:

"What is the signifance of the word 'subject' in this connection? Webster defines it as 'that of which anything is affirmed or predicated; the theme of a proposition or discourse; that which is spoken of.' To say that mere reference to a numbered section embodies the idea of a theme, proposition or discourse, it seems to us, is not sustained by the ordinary understanding of those terms. The theme of a legislative act is that of which it treats, and an amending act treats of the theme covered by the act sought to be amended. We therefore see no escape from the conclusion that the title of an amending act must contain some words which indicate the theme or proposition of which the act sought to be amended treats."

However, all difficulty is avoided if the title of the amendatory act recites the title of the chapter to which the section belongs, or otherwise indicates its subject-matter. 1 Lewis' Suth. Stat. Constr. (2d Ed.) § 141.

Appellant relies largely upon the ruling by the Nevada Supreme Court in the case of In re Mantlel, 216 P. 509, cited supra, wherein it is held that :

The 'Whitely Act' (St. 1923, p. 43), entitled 'An act to make the provisions of the National Prohibition Act of the United States of America the law of the state of Nevada,' etc., does not express the subject in its title as required by Const. Art. 4, § 17, because it does not appear therefrom what the provisions are, and leaves it to be ascertained by looking to the act itself.

"As respects the requirement as to expressing the subject in the title, the 'subject' of a statute is a matter of public or private concern in respect to which its provisions are enacted, or the matter or thing forming the ground

work of the act, or the matter to which it relates and with which it deals."

In the majority opinion in that case by Coleman, J., the court said:

"Is there anything in the title in question to enable the people or the legislators to grasp the purpose and scope of the bill without reference to any other document? We think not. The so-called title merely declares that it is an act to make the 'provisions' of an act of Congress the law of the state of Nevada. It is true that it undertakes to designate the act of Congress, the provisions of which it purports to incorporte into a law. Nowhere in the title of the statute does it appear what the provisions of the act of Congress are."

It is further stated in this opinion that:

"The National Prohibition Act cannot be the 'subject' of legislation in the sense in which that term is used in the Constitution. The act mentioned is itself legislation upon a subject."

In support of this view several cases are cited wherein titles to acts, referring merely to numbers such as those hereinbefore quoted from New York and Indiana, are referred to. A quotation is made from the case of Gunter v. Texas Land Co., 82 Tex. 496, 17 S. W. 840, in support of this contention. An examination of the opinion of this case will show that it wholly fails to sustain the proposition in support of which it was cited. It was there held that the title of an act relating to property rights, being "An act to amend title 3, articles 9 and 10, and to add articles 10a, 10b, 10c, 10d, 10e, 10f, 10g, and 10h, and to repeal all laws in conflict therewith," was insufficient to meet the constitutional requirements, for the reason that it "does not name the body of laws by its title or otherwise which it was the purpose of the Legislature to amend, nor does it otherwise designate the subject in reference to which it was intended to legislate." In the opinion in that case, it is stated:

"Since the enactment of the Penal Code and Code of Criminal Procedure the Legislature has amended them by acts, the titles of which gave the number of the articles to be amended and the name of the Code as given by the act adopting it, and the same course has been pursued in reference to the Revised Statutes; and in view of the legisla-

tive construction thus placed upon the section of the Constitution under consideration, as well as some decisions by this and other courts based on like provisions, we would not feel authorized to hold that such a construction was so clearly wrong as to justify this court in holding statutes with such titles invalid, although it might seem to us that a different rule would be more in harmony with the requirements of the Constitution.

"The views on which the Legislature and courts have proceeded doubtless are that the Penal Code, Code of Criminal Procedure, and Revised Civil Statutes each relate to but one subject. * * *

"Under the liberal rule above suggested, it cannot, however, with reason be contended that the title of the act under consideration is a substantial compliance with the requirements of the Constitution, for the title does not name the body of laws, by its title or otherwise, which it was the purpose of the Legislature to amend, nor does it otherwise designate the subject in reference to which it was intended to legislate."

This is the case quoted as the text for section 132 of 1 Lewis' Suth. Stat. Constr. (2d Ed.), referred to in the Mantell case.

In the case of Pennington v. Woolfolk, 79 Ky. 13, therein referred to, the title of the act was as follows:

"An act to amend article 3 of chapter 5 of the General Statutes."

The section from 36 Cyc. 1032, is cited in support of the court's ruling. All the cases cited in support of this text refer to mere number titles similar to those above referred to. Mr. Justice Sanders, in his dissenting opinion (216 P. 511), states:

"The Legislature as a lawmaking body has the right to choose the title to an act passed by it. * * * Courts are not authorized to exercise a scholastic supervision or censorship over the various ways by which members of the Legislature are informed or apprised of the subject of their enactments. Nothing that this court has ever decided, nor, indeed, so far as I have examined, any other court justifies the position that the purpose of section 17, art. 4, of the Constitution, is to give notice of the actual enactment without imposing upon the members of the Legislature and the public the burden of looking elsewhere to ascertain just what is the subject sought to be legislated upon. * * *

"I can see that the division of statutes into titles and chapters is chiefly a matter of convenience, and reference to the title or chapter is simply a ready method of identifying the

particular provisions which are meant.  *  *  *     But the
language of the title   *   *   *   here under review is differ-
ent. The title makes no reference to the number of the arti-
cle and chapter.   *   *   *   but does make reference to two
laws which relate to the same subject matter.    It refers to
one by the name given it by the act of congress, and the
other is referred to by its title.    One is   *   *   *   the Na-
tional Prohibition Act, and the other  *   *   *   the Nevada
Prohibition Act."

Again, he states:

"Furthermore, speaking argumentatively, since the adop-
tion of the Eighteenth Amendment to the Constitution of the
United States, the name, to wit, the National Prohibition Act,
has acquired a judicial and common significance It has been
the subject of more judicial and forensic discussion than any
legislation of modern times."

The Eighteenth Amendment was adopted by Con-
gress under the title of "Senate Joint Resolution, No.
17." See General Statutes of 1918, vol. 40, Stat. p.
1050. The National Prohibition Act was "chapter 85"
of the General Statutes of 1919. See 41 Stat. p. 305.
Had this amendment been referred to in chapter 118
as "Senate Joint Resolution, No. 17," and the National
Prohibition Act referred to as "chapter 85," there
would have been presented a parallel case to those
referred to as authority for the ruling of the majority
of the court in the Mantell Case. But such is not the
case here, and we are unable to find any other case
which supports that opinion.

In our opinion, the purposes as stated in R. C. L.
p. 36, and the other authorities cited, are accomplished,
since the title could not have been a part of any "log-
rolling" legislation, and it was sufficient to prevent
any surprise or fraud in the Legislature by failing to
give any intimation as to the purpose of the bill, and
fully apprised the people of the subject of the legisla-
tion under consideration.   While reference to a statute
by its number and section has been held insufficient
to comply with this constitutional provision by some
courts, the title in the instant case is different.   Here
the declared purpose of the act as expressed in the
title is the enforcement of the provisions of the Eigh-
teenth Amendment by prohibiting the acts or omissions

prohibited by the National Prohibition Act passed by Congress for its enforcement, and the title to chapter 118 is sufficient to clearly state the subject of this legislation, so that the Legislature and every one else would know what was thereby referred to. There is, therefore, no merit in the contention of appellant that the subject or object of chapter 118 is not clearly expressed in its title.

[2, 3] 2. It is claimed that the declaratory portion of section 1 of chapter 118, wherein the penal provisions of the National Prohibition Act are attempted to be adopted as the law of this state, is in contravention of article 4 of section 15 of the New Mexico Constitution, which provides: "No law shall be passed except by a bill," etc., and the purported bill by which chapter 118 was attempted to be passed was not a bill, because not complete in this: The declaratory portion of said section does not set out any rule of conduct which is denounced and no act is set forth as being unlawful.

Section 1 of chapter 118 provides that—

"The penal provisions of the National Prohibition Act are hereby adopted as the law of this state."

Section 2 provides that—

"All acts or omissions prohibited or declared unlawful by the Eighteenth Amendment * * * or by the National Prohibition Act are hereby prohibited and declared unlawful and violations thereof are subject to the penalties provided in the National Prohibition Act."

Chapter 118 belongs to what is known as reference statutes, and it is claimed that the adoption of the provisions of the National Prohibition Act by mere reference does not serve to incorporate them in the body of the act in compliance with the section of the Constitution above referred to. As was said in the California law hereinbefore referred to, in the case of Ex parte Burke, 190 Cal. 326, 212 Pac. 193, supra, this belongs to that class of statutes known as reference statutes, and—

"wherever there is no constitutional provision which forbids

it, it is proper to declare that any law of the United States,
or of another state, shall be the law of this state. * * *
It is a general principle of law that in adopting a statute the
Legislature or Congress may do so by reference, as well
as by setting out the statute at length, and even where the
statute adopted is the statute of another state or territory the
principle is the same."

What is known as reference statutes are well recog-
nized, and in discussing a statute of the state of Ala-
bama entitled, "An act to extend to the fire companies
of the city of Montgomery the benefit of the provisions
of an act to raise a fund for the benefit of a fire com-
pany in Mobile," in the case of Phoenix Assur. Co. v.
Fire Department of the City of Montgomery, 117 Ala.
631, at page 646, 23 So. 843, 847 (42 L. R. A. 468)
Brickell, Chief Justice, says, in regard to this statute:

"It belongs to a distinctive class of statutes, known or
termed as reference statutes, not of infrequent enactment,
constitutional limitation not forbidding. Statutes which re-
fer to, and by reference adopted wholly, or partially, pre-
existing statutes. In the construction of such statutes, the
statute referred to is treated and considered as if it were
incorporated into, and formed part of that which makes the
reference. Turney v. Wilton, 36 Ill. 385; Sedgwick, Stat. &
Con. Law 229, note; Sutherland, Stat. Con. § § 147, 257;
Knapp v. Brooklyn, 97 N. Y. 520. The two statutes co-
exist as separate and distinct legislative enactments, each
having its appointed sphere of action, and the alteration,
change, or repeal of the one, does not operate upon or
affect the other. Sika v. Railway Co., 21 Wis. 370; Suther-
land, Stat. Con. § § 147-157."

See, also, 1 Lewis' Stat. Constr. (2d. Ed.) § 405.

In 25 R. C. L. pp. 907, 908, § 160, it is said:

"Statutes which refer to other statutes and make them
applicable to the subject of the legislation are called 'refer-
ence statutes.' Their object is to incorporate into the act of
which they are a part the provisions of other statutes by ref-
erence and adoption. Reference statutes are of frequent use
to avoid incumbering the statute books by unnecessary repeti-
tion, and they have frequently been recognized as an approved
method of legislaiton, in the absence of constitutional re-
strictions * * * It is a general rule that when a statute
adopts a part or all of another statute, **domestic or foreign,**
general or local, by a specific and descriptive reference there-
to, the adoption takes the statutes as it exists at that time.
The subsequent amendment or repeal of the adopted statute
has no effect on the adopting statute, unless it is also repealed
expressly or by necessary implication." (blackface ours.)

The Supreme Court of Indiana, in State ex rel. Linthicum v. Board of Commissioners, 175 Ind. 400, 94 N. E. 716 (3), held:

"One statute may adopt another by a specific and descriptive reference thereto; the effect being as if so much of the adopted act as is in force and is applicable to the adopting act had been copied therein."

As to the validity of so-called "reference statutes," see, also, Van Pelt, Sheriff, v. Hilliard, 75 Fla. 792, 78 So. 693 (8), L. R. A. 1918E, 639; State v. Hopkins, 298 Ill. 101, 131 N. E. 262 (2); Zeman v. Dolan, 279 Ill. 295, 116 N. E. 642 (3); Vallejo, etc., Co. v. Reed Orchard Co., 169 Cal. 545, 147 P. 238 (2); Evans v. Illinois Surety Co., 298 Ill. 101 (1), 131 N. E. 262; People ex rel. Kent v. Crossley, 261 Ill. 78, 103 N. E. 537 (2); Santee Mills v. Query, 122 S. C. 158, 115 S. E. 202 (6); State ex rel. Miller v. Leich, 166 Ind. 680, 78 N. E. 189, 9 Ann. Cas. 302, and note.

Many other cases could be added to the above list; but a multiplication thereof is unnecessary. However, it may be contended that the National Prohibition Act is a national law and not a law of this or any other state, and that reference statutes should be limited to those adopting by reference laws of the state of the reference statute. But this does not seem to be the correct rule, as will be seen from the quotation from R. C. L. above, where foreign laws are referred to. Congress, under the Act of May 2, 1890 (26 Stat. 94), adopted a law providing that the laws of Arkansas relative to certain matters should be extended and put in force in the Indian Territory. In the case of Robinson & Co. v. Bilt. 187 U. S. 41, 23 S. Ct. 16, 47 L. Ed. 65, this law is referred to and the act of Congress is there upheld. If, as there stated, the laws of a state can be adopted by Congress as a part of the congressional act, and be thereby incorporated in such act, we can see no logical reason why an act of Congress cannot be similarly adopted by the Legislature of a state.

Such reference statutes sometimes adopt specific portions of other laws as here, and in other cases adopt

State v. Armstrong, 31 N. M. 220

a system of laws in general or general provisions in general laws. As is said in Sandoval v. Albright, 14 N. M. 345 (2), 93 P. 717, "the common law is in force in New Mexico, except as modified by statute"; and this is by virtue of a reference statute. At the time of the adoption of the original Constitutions of many of the state, the common law of England, as it existed at the time of our separation from the mother country, was incorporated into the laws of such adopting state by reference only. It was in this way the English Statute of Frauds (Stat. 29 Car. II, c. 3 [1677]) was adopted in this state. As examples of the adoption of the general provisions of other statutes in this state as a part of the adopting statute, we refer to section 3591, Code 1915, which, after making specific provisions relative to elections in municipalities, provides:

. "All elections for municipal officers shall in all respects be held and conducted in the manner prescribed by law in cases of county elections."

Also secton 5130, which after authorizing the appointment of a board of regents for the Agricultural and Mechanical College, provides that:

"Said five regents shall possess the same qualifications, as required for the regents of the University of New Mexico."

But it is urged that the class of statutes known as reference statutes do not embrace enactments defining crimes, and appellant challenges the Attorney General to point out any penal statute which has been adopted in this manner. We accept this challenge.

"Common-law crimes are recognized and punished in New Mexico, by virtue of section 3422, C. L. 1897, which provides: 'In criminal cases the common law as recognized by the United States and the several states of the union shall be the rule of practice and decision.'" Ex parte De Vore, 18 N. M. 246, 136 P. 47.

It will thus be seen that quite a material part of the civil and criminal laws of New Mexico are such through reference statutes alone.

We are not unmindful of the difficulties imposed

upon the people generally, and upon the courts and officers called upon to enforce such statutes, by thus requiring them to search out from the voluminous title 2 of the National Prohibition Act the provisions incorporated in chapter 118. It is true, as claimed by appellant, that an inspection of title 2 of the National Prohibition Act will show that the matter of arriving at what are its penal provisions is not without difficulty, but we cannot hold that it is impossible to determine what such provisions are by an inspection thereof; and the mere fact that the act as passed is difficult of interpretation, is not sufficient to render it void and unconstitutional.

"A statute cannot be held void for uncertainty, if any reasonable and practical construction can be given to its language. Mere difficulty in ascertaining its meaning or the fact that it is susceptible of different interpretations will not render it nugatory. Doubts as to its proper construction will not justify us in disregarding it. It is the bounden duty of the courts to endeavor by every rule of construction to ascertain the meaning of, and to give full force and effect to, every enactment of the General Assembly not obnoxious to constitutional prohibitions." State v. West Side Str. Ry. Co., 146 Mo. 155, 47 S. W. 959, quoted with approval in 1 Lewis' Suth. Stat. Constr. (2d Ed.) § 86.

See, also, 25 R. C. L. 810, § 62, where it is said:

"Where an act of the Legislature is so vague, indefinite, and uncertain that the courts are unable to determine, with any reasonable degree of certainty, what the Legislature intended, or is so incomplete, or is so conflicting and inconsistent in its provisions that it cannot be executed, it will be declared to be inoperative and void. But legislation should not be held invalid on the ground of uncertainty if susceptible of any reasonable construction that will support and give it effect. * * * The fact, alone, that an act is open to the criticism that it is vague, uncertain and indefinite in some of its provisions does not render it void so long as it does not infringe some constitutional provision, and is capable of execution in its more essential provisions."

The meaning of chapter 118 is probably no more difficult to be arrived at than the statute referred to in the New Mexico case of Territory v. Prince, 6 N. M. 635, 30 P. 934, relative to which we quote the following from 1 Lewis' Suth. Stat. Constr. (2d. Ed.) § 86:

"In one case the two houses were at loggerheads over

the appropriation bill for the forty-second and forty-third fiscal years. The pending bill consisted mainly of two sections; section 1 making the appropriations for the forty-second year, and section 2 making the appropriations for the forty-third year. A conference committee was appointed on the last day of the session and it agreed upon a report and rewrote section 1 of the bill, but did not have time, within the limits of the session, to rewrite section 2. Accordingly, between section 1 as rewritten and old section 2 they inserted the following: 'The amendments in section 2 coincide with those of preceding section throughout, and amendments and notes to be changed to the same.' In this condition the bill was passed and the court sustained it, holding that that was certain which could be made certain, and that, by means of section 1 and the above memorandum, section 2 could be read as intended by the Legislature."

This statute, which was far more vague and indefinite than the one under consideration, was upheld by the Supreme Court of this state. While we do not wish in any sense to be understood as approving the method of legislation embodied in section 118, we cannot say that it is either void for vagueness and indefiniteness or as in conflict with the Constitution of New Mexico above referred to. However, we desire to say that in our opinion, it would be very much better in order to accomplish the purpose intended by the Legislature, if another Legislature would clearly define and accurately state the specific provisions of the National Prohibition Act incorporated in the laws of New Mexico, and thus remove the objections to the chapter as enacted, and remove any difficulty or ambiguity resulting therefrom.

For the reasons above stated, we therefore hold that by virtue of the principle recognized in the enactment of reference statutes, sections 1 and 2 of chapter 118, by reference and adoption, set out therein the rules of conduct which are denounced and the acts which are declared unlawful by reference to and the adoption of the penal provisions of those sections of the National Prohibition Act, wherein the same are defined and penalties for their violation provided for, and is not in conflict with section 15 of article 4 of the Constitution of New Mexico.

[**4, 5**] Appellant contends that:

"That portion of sections 1 and 2 of chapter 118, wherein by way of adoption it is attempted to prohibit acts and omissions as contained in title 2 of the acts of Congress, is in contravention of article 4, § 18, of the New Mexico Constitution, because such an attempt extends the provisions of said section 1, 2 and 7 by reference to title only, and because the proposed extension referred to by title only was not set out in full."

This section of the Constitution is as follows:

"Sec. 18.   No law shall be revised or amended, or the provisions thereof extended by reference to its title only; but each section thereof as revised, amended or extended shall be set out in full."

In support of this contention appellant presents the following ingenious argument:

"The first clause declares what shall not be done, and the second·clause states what shall be done.   Chapter 118 is not a revision or an amendment, but is an attempted new enactment; then that portion of said provision germane to the manner of extending the provisions of law, dropping the provisions concerning revisions and amendments, would read as follows: 'No law, or the provisions thereof, shall be extended by reference to title only; but ·each section thereof as extended shall be set out in full.'

"An attempt is made by sections 1, 2 and 7 of chapter 118 to extend the provisions thereof by reference to 'title 2 ·of the acts of Congress' and the National Prohibition Act.' ¡Such a method of attempted legislation violates the first clause of said constitutional provision.   The matter con-·tained in the proposed extension to sections 1, 2 and 7 is not set out in full, and thus the second clause of said constitutional provision is violated.   It will be noted in para-·phrasing the constitutional provision 'its' before 'title' is eliminated.   A law has a title, but the provisions or sections of a law do not have titles, and when the pronoun 'its' was used it referred to revised and amended laws, and not to the extension of the provisions or sections of a law."

After defining "revise," "amend," and "extend," he ·concludes:

"Therefore, it will be seen that the terms 'revise,' 'amend,' and 'extend' the provisions of a law are not synonymous. Chapter 118 was begun and sections 1, 2 and 7 were attempted to be amplified by reference to title only.   This, we contend, is a plain violation of the constitutional pro-·vision."

This argument is unsound. In the first place, by omitting the word "its" before the word "title," it seeks to make the provisions of this constitutional amendment applicable to the extension of the provisions of the law being enacted, and not to the provisions of some other law which has already been enacted. A correct interpretation of this constitutional provision would seem to be this:

"No law, or the provisions thereof, shall be extended by reference to its title only, but each section thereof, as extended, shall be set out in full."

It is a common and a constant and well-recognized practice in the enactment of long and complicated laws to refer in some particular section to certain other sections of this law, and to make special provisions relative to the sections so referred to. It is sometimes provided in such laws that violations of certain numbered sections thereof shall be criminal offenses, and certain penalties inflicted for such violations. If the contention of appellant is sound, then, whenever any subsequent section of any legislative enactment refers to any former section, it would be necessary to set out the former sections so referred to in full. No such meaning of the constitutional provision above referred to has ever before been suggestd, so far as we are able to discover, and it is our conclusion that this constitutional provision refers to the extension of another law or its provisions, and not to the provisions of the new law in process of enactment; but the question of whether chapter 118, and other such reference statutes, by referring to and making parts thereof the provisions of other laws, violates this constitutional provision, presents a different question, and one not without difficulty of solution.

The Constitutions of Alabama, Arkansas, Colorado, Kentucky, Montana, North Dakota, Oklahoma, Pennsylvania, and Wyoming all contain provisions similar to that of the Constitution of New Mexico with reference to the phrase "or the provisions thereof extended" by reference to its title only, and in many of these

states, this constitutional provision has been construed with reference to "reference statutes." In none of them has the contention of appellant been even considered, but the question in each has been whether this constitutional provision referred to "reference statutes." In section 120 of 25 R. C. L. at page 870, it is said:

> "Statutes known as 'reference statutes'—that is, statutes which refer to, and by reference adopt, wholly or partially, pre-existing statutes—are not strictly amendatory or revisory in character, and not obnoxious to the constitutional provision which forbids a law to be revised, amended or the provisions to be extended or conferred by reference to its title only."

A somewhat similar constitutional provision in practically one-third of the states provides in substance that no law shall be revised, revived, or amended by reference to its title only, but that so much thereof as is revised, revived, or amended shall be set forth and re-enacted at length. The decision in all of these states so far as we can find are unanimous in holding that "reference statutes" such as chapter 118, are not forbidden by this constitutional provision. See Phoenix Assurance Co. v. Montgomery Fire Department, 117 Ala. 631, 23 So. 843, 42 L. R. A. 468; People v. Mahaney, 13 Mich. 481 (opinion by Justice Cooley); Zeman v. Dolan, 279 Ill. 295, 116 N. E. 642; Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693, L. R. A. 1918E, 639; People v. Crossley, 261 Ill. 78, 103 N. E. 537; Ex parte Burke, 190 Cal. 326, 212 P. 193. Many other decisions can be added to the above.

However, the constitutional provision in the 10 states above mentioned adds to the constitutional provision "that no act may be revived, revised or amended by reference to its title only," the words "or the provisions thereof extended," so that they read in substance as follows:

> "No act shall be revised, revived or amended, or the provisions thereof extended by reference to its title only."

This is not intended to be an exact quotation, but is the meaning in substance of this portion of this consti

tutional provisions in these 10 states. An examination of the various cases from these states, with constitutional provision similar to that of New Mexico, shows that the quotation from section 120, R. C. L. above quoted, is amply supported by authority. In the case of Savage v. Wallace, 165 Ala. 572, 51 So. 605, it was held that:

"Reference statutes are not strictly amendatory or revisory in character, and hence are not obnoxious to the constitutional provision against revising, amending or extending the provisions of a law by reference to its title only."

In the opinion in that case, Mr. Justice Sayre, on page 575 (51 So. 606), says:

"There is a class of statutes, known as 'reference statutes' which impinge upon no constitutional limitations. They are statutes in original form, and in themselves intelligible and complete—'statutes which refer to, and by reference adopt, wholly or partially, pre-existing statutes, the statute referred to is treated and considered as if it were incorporated into and formed a part of that which makes the reference. The two statutes coexist as separate and distinct legislative enactments, each having its appointed sphere of action; and the alteration, change or repeal of the one does not operate upon or affect the other.' Phoenix Assurance Co. v. Fire Department, 117 Ala. 631, 23 So. 843, 42 L. R. A. 468. Such statutes are not strictly amendatory or revisory in character, and are not obnoxious to the constitutional provision which forbids a law to be revised, amended or the provisions thereof to be extended or conferred by reference to its title only. That prohibition is directed against the practice of amending or revising laws by additions to, or other alterations, which without the presence of the original act are usually unintelligible. Ex parte Pollard, 40 Ala. 100; State v. Rogers, 107 Ala. 444, 19 So. 909, 32 L. R. A. 520."

This excerpt was quoted with approval in the case of State v. Tausick, 64 Wash. 69, 116 P. 651, 35 L. R. A. (N. S.) 802, in support of the conclusion that the adoption by a new law of all existing laws with reference to cities of a certain class was not in violation of the provisions of the Constitution of that state, which did not, however, contain the words "extend and confer," but which, it was said, plainly was intended to prevent the same legislative abuse at which that section of the Constitution of Washington was aimed.

Constitutional provisions almost in exact terms of these of New Mexico are found in section 25, art. 5, of the Constitution of Montana, and section 26, art. 3, of the Constitution of Wyoming. Our constitutional provision must therefore have been patterned after that of one of these two states.

In King v. Pony Gold Mining Co., 24 Mont. 470, 62 P. 783, it is said:

"Const. art. 5, § 25, providing that no law shall be revised or amended, or the provisions thereof extended, 'by reference to its title only, but so much thereof as is revised, amended or extended shall be re-enacted and published at length,' has no application to an act which does not purport to be an amendment to or a revision of a prior act, but is an additional and independent piece of legislation, impliedly amending, and hence repealing, so much of the prior act as is in conflict with it."

In the opinion in that case Mr. Justice Pigott says:

"The object sought to be attained by the prohibition of the Constitution against amendments by reference to the title only of the act to be amended was to remedy a well-known evil. Many statutes were amended by merely striking out or adding words or phrases, the amendatory statute giving no intimation of the language of the statute so amended. To obviate the confusion and uncertainty consequent upon that mode of amendment, section 25 of article 5 of the Constitution requires that the statute as amended shall be re-enacted and published at length, neither the letter not the spirit of which is applicable to the act" under consideration.

And in Spratt v. Helena Power Co., 37 Mont. 60 (6), 94 P. 631, it is held that:

"An act, original in form, which grants some power, confers some right, or creates some burden or obligation, is not in conflict with the provisions of section 25, art. 5, of the Constitution, which provides that 'no law shall be revised or amended, or the provisions thereof extended by reference to its title only,' even though it does refer to some other existing statute, general or local, for the purpose of pointing out the procedure or some administrative detail necessary for the execution of the power, the enforcement of the right or the discharge of the burden or obligation."

In State v. Centennial Brewing Co., 55 Mont. 500 (2), 179 P. 296, it is held:

"An act which does not assume to be an amendment, nor

re-enact that portion of a prior statute claimed to be amended by it, does not, under section 25, art. 5, of the Constitution, have the effect of an amendment."

In Commonwealth v. Alderman, 275 Pa. 483, 119 A. 551, it was held that the Woner Act, referring to acts of Congress for the determination as to what constitutes intoxicating liquors, did not violate the constitutional provision as to amendment or extension; "the restrictions in the state Contitution not being intended to apply where the state, in the exercise of its concurrent powers of enforcing the Volstead Act, must accept the interpretation placed upon that law by Congress."

In State v. McKinley, 120 Ark. 165, at page 167, 179 S. W. 181, 182, Hart, J., said with reference to this constitutional provision, as follows:

"The purpose of the clause of the Constitution was to protect the members of the Legislature and the public against fraud and deception. Where the new act is not complete but refers to a prior statute which is changed so that the legislative intent on the subject can only be ascertained by reading both statutes, uncertainty and confusion will exist and this constitutes the vice sought to be prohibited by this clause of the Constitution. In the case before us the act is very broad and comprehensive. It is complete in itself and in no manner attempts to amend or change the existing election laws. On the contrary the general election laws are undisturbed and are in no wise affected by section 5433, pertaining to municipal elections.

"It is no objection to the statute that in order to ascertain how elections in cities and towns shall be held it becomes necessary to refer to existing laws relative to holding general elections for state and county officers. This rule was recognized and applied by this court in the case of Watkins v. Eureka Springs, 49 Ark. 131, and Common School Dist. v. Oak Grove Special School Dist., 102 Ark. 411. In the former case the court said: 'We are not, however, prepared to assert that when a new right is conferred or cause of action given the provision of the Constitution quoted requires the whole law governing the remedy to be re-enacted in order to enable the courts to effect its enforcement.' "

In this case, the Montana, Alabama and Michigan cases above referred to are quoted with approval.

In House v. Road Improvement District No. 4, 154 Ark. 219 (2), 242 S. W. 68, it is held that:

"Const. art. 5, § 23, providing that no law shall be amended or its provisions extended or conferred by its title only, but so much as is revived, amended, extended, or conferred shall be re-enacted and published at length, does not apply ,to statutes which are in themselves complete, though they refer to and adopt pre-existing statutes."

In Denver Circle R. Co. v. Nestor, 10 Colo. 403, 15 P. 714, it is held:

"The act of February 10, 1883, § 3, providing that in all civil cases, both at 'law and in equity, the superior courts shall, within the cities and towns for which they are created, have concurrent jurisdiction with the district court, and that the proceedings, practice and pleadings therein shall be the same as in the latter court, is not in violation of article 5, § 24, of the state Constitution."

In the opinion in that case is a long and instructive discussion of this question. See also, In re Questions to the Governor, 55 Colo. 17 (5), 123 P. 660, for a somewhat similar ruling. In Pennsylvania, see Guenthoer's Estate, 235 Pa. 67 (2 and 3), 83 A. 617, which construes a reference statute. See, also, City of Pond Creek v. Haskell, 21 Okl. 711 (6), 97 P. 338; State v. Fargo Bottling Works, 19 N. D. 396, 124 N. W. 387 (7), 26 L. R. A. (N. S.) 873.

A very interesting case as showing the line of demarcation between statutes which offend this provision of the Constitution, and those which do not, is Farris v. Wright, 158 Ark. 519, 250 S. W. 889, wherein the provisions of the following statute were construed:

"The estate of curtesy is hereby abolished, and hereafter, upon the death of a married woman, her surviving husband shall have in her estate the same interest that the wife has in the estate of the husband upon his death under the laws of this state."

Chief Justice McCulloch, after stating that the rule in that state was "when a new right is conferred or cause of action given" the constitutional provision ap-. plies, but that, if the act is "original in form, and by its own language grants some power, confers some right, or creates some burden or obligation," it does not conflict with the Constitution, says:

"The statute plainly confers, not a mere remedy, or meth-

od of procedure for enforcing a right, but it undertakes to confer a substantive right or interest. The statute undertakes, in other words, to provide an interest which the surviving husband shall have in the estate of his wife upon the latter's death. This is a right or interest sought to be vested, and not a remedy or procedure to be adopted in securing a declared right."

In the dissenting opinion in that case, in which Justice Hart concurs, Justice Smith says:

"The act here under review is of a class commonly designated as a reference statute. It is complete in itself, although reference to other statutes is necessary to comprehend the scope of its application. But that fact does not make it offend against the Constitution. If one will turn through a copy of the acts of the General Assembly for any session he will find much legislation enacted in this manner; and, if we should hold such legislation unconstitutional, chaos would result. To require legislation to be so complete that no reference would be necessary to any other legislation to determine the meaning of the particular legislation would, as was said by Chief Justice Cockrill in Watkins v. Eureka Springs, supra, hamper legislation almost to the extent of prohibiting it."

He also quotes from House v. Road Imp. Dist. No. 4, 154 Ark. 218, 242 S. W. 68, the following:

"There is, however, a class of statutes known as reference statutes, which do not encroach upon this or any other constitutional provision. They are statutes in original form and in themselves complete; but refer to and by reference adopt pre-existing statutes. The two statutes are separate and distinct legislative enactments, each having its appropriate sphere."

In the conclusion, he states:

"The statute is original in form and by its own language confers a new right, which is made definite and certain by a consideration of other statutes which are in **no wise changed or amended by the act under review.**" (blackface ours.)

And in Poe v. Street Impr. Dist. No. 340 et al., 159 Ark. 569, 252 S. W. 616, it was held that laws providing for the annexation of territory to original street imrovement districts in cities and towns, and providing that improvements be made under laws applicable to the original districts without re-enacting such laws, was constitutional.

But probably the most comprehensive discussion of the question here under review is found in the case of Lyman v. Ramey, 195, Ky. 223, 242 S. W. 21, which reviews many of the authorities upon this question, some of which authorities have hereinbefore been referred to. In that case, the Legislature of Kentucky had authorized fidelity and guaranty companies to do business in that state, and, in the paragraph immediately after such authorization, had enacted "that said companies shall comply with all provisions of law applicable to fire and marine insurance companies of other states, doing business in this state." It was contended that this provision of the law was in conflict with the constitutional provision above referred to. Mr. Justice Clarke, in the opinion in this case, quotes with approval the quotation from Savage v. Wallace, 165 Ala. 572, 51 So. 605, hereinbefore set out, wherein it is stated that reference statutes do not offend this constitutional prohibition. He also calls attention to the fact that the Alabama case had been quoted with approval by the Supreme Court of Washington in State v. Tausick, 64 Wash. 169, 116 P. 681, 35 L. R. A. (N. S.) 802, and, while he calls attention to the fact that the Constitution of Washington is wanting in the words "extend" and "confer," he states as to these words that they were plainly intended "to prevent the same legislative abuses at which section 51 of our Constitution is directed," which provides that the act revised or the section amended shall be set forth at length. In this Kentucky case, the decisions of Alabama, Arkansas, Colorado, and Pennsylvania, together with the prior decisions in Kentucky, are reviewed and discussed, to which we have added, in our discussion, North Dakota, Montana, and Oklahoma. While it is not distinctly held in that case that this constitutional provision does not apply to reference statutes, rulings in other states to that effect are cited with approval.

There are three states in which constitutional provisions have been adopted expressly providing that in enacting a new statute, if all or part of another statute is adopted, they shall set forth in full in the adopt-

ing statute. These states are New Jersey, New York, and North Dakota. The New Jersey provision par. 4 § 7, art. 4, is as follows:

"No law shall be revived or amended by reference to its title only, but the act revived, or the section or sections amended, shall be inserted at length. * * * No act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of the act, or which shall enact that any existing law, or any part thereof, shall be applicable, except by inserting it in such act."

And the Constitution of New York (section 17, art. 3) provides that:

"No act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law, or part thereof, shall be applicable, except by inserting it in such act."

The Constitution of North Dakota (section 64, art. 2) provides that:

"No bill shall be revised or amended, nor the provisions thereof extended **or incorporated in any other bill** by reference to its title only, but so much thereof as is revised, amended or extended **or so incorporated** shall be re-enacted and published at length." (blackface ours.)

These constitutional provisions in these three states appear to be aimed at the practice of inserting the provisions of other laws into a law being enacted, by reference only, but in all these states it has been held that, if the act is complete in itself, it may adopt rules of construction or modes of procedure in carrying out its provisions by reference to other statutes. See Campbell v. Board of Pharmacy, 45 N. J. Law, 245; Christie v. McNeal, 48 N. J. Law, 407, 5 A. 805; People ex rel. v. Banks, 67 N. Y. 575; State v. Fargo Bottling Works, 19 N. D. 396, 124 N. W. 387 (7), 26 L. R. A. (N. S.) 873.

If, then, this constitutional provision applies only to the extending of the provisions of an existing statute, and not to the extending of the provisions of the statute being enacted, does chapter 118 have the effect of extending the provisions of the National Prohibition Act? We think not. This latter is an act of Congress and cannot, of course, be changed, amended, or ex-

tended by our Legislature in such a way as to affect the original act. According to the Century Dictionary, "extend" means "to make more comprehensive; enlarge the scope of; give a wider range to." The National Prohibition Act is not made more comprehensive. It remains as it was. Its scope is not enlarged, since it already had full operation in New Mexico. For the same reason it gives it no wider range. Chapter 118 is simply a state prohibition act. The Eighteenth Amendment in section 2 provides:

"The Congress and the several states shall have concurrent power to enforce this article by appropriate legislation."

This the Congress has done by the National Prohibition Act. This the Legislature of New Mexico attempted to do by chapter 118. It does not purport or attempt to adopt the National Prohibition Act as the state prohibition act, and make it operative within the state. It already so operated. It simply enacts a state statute creating state offenses with penalties, and provides for the enforcement of its provisions by state officers. As its definitions of these offenses and penalties, it merely adopts the definitions of the same as contained in the National Prohibition Act without setting them out, and thereby incorporate "into the act of which they are a part (chapter 118) the provisions of other statutes (The National Prohibition Act) by reference and adoption." 25 R. C. L. p. 907 § 160. As an illustration of the operation of this process, this same principle applies in the drawing of deeds. Frequently descriptions are adopted from other deeds without setting them out. These adopted portions of other such deeds thereby become a part of the new deed as if set out therein. But it would not be claimed that the provisions of the former deeds are extended, or in any way affected by being thus incorporated into the new deed. If the new deed sought to change, modify, or extend the description of the deeds referred to, a different result would follow. Then the other deed would, in fact, be changed. Such are correction deeds. So with statutes which extend and enlarge other statutes. We therefore conclude that this constitutional provision applies only

to enactments whose purpose is to amend, extend, or enlarge the provisions of a former law or laws, and thereby change their operation and effect. The following cases are referred to as illustrating the application of this constitutional provision.

In Rider v. State, 132 Ark. 27 (1), 200 S. W. 275, it was held:

"Act 310, Acts 1909, created a stock district in Franklin county. Act 145, session 1915, provided 'that wherever Act No. 310 of the General Assembly of 1909 now reads, "Charleston district of Franklin county," the same shall be amended, and the same is hereby amended to read, "Charleston district of Franklin county and Borham and Wittich townships of Franklin county." ' "

This act was held invalid under this provision of the Constitution of Arkansas.

In Street v. Hooten, 131 Ala. 492, at page 500, 32 So. 580, 582, it was held that an act, entitled an act "to provide for the extension of stock law in Clay County," the express purpose of which act was to extend the provisions of such act without re-enacting and publishing them, probably violated this provision of the Constitution of Alabama.

In Titusville Iron Works v. Keystone Oil Co., 122 Pa. 627, 15 A. 917, 1 L. R. A. 361, the law under consideration was "An act relating to the lien of mechanics and others upon buildings," which in its first section provides that the provisions of two former acts, which had been held not to apply to mechanics, should "be construed to include claims for labor done by mechanics * * * in the erection and construction of buildings." It was held that, since this act extended and conferred the benefits of two other acts to a larger class of claimants by reference to their titles only, without re-enacting a single one of the provisions so extended, it violated this provision of the Constitution of Pennsylvania.

We therefore conclude that the constitutional provision in New Mexico applies only to laws which, by their terms or necessary implication, revise, amend, or

extend the provisions of other laws, thereby changing the original law by such amendment or extension, and do not refer to the enactment of a new law complete in itself, except that, for the purpose of definitions or otherwise, it refers to provisions of an act of Congress by name and does not set out in full the provisions of such act so referred to and adopted.

[**6, 7**] 4. The fourth constitutional objection is that chapter 118 is in violation of section 12 of article 20 of the Constitution of New Mexico, which requires that for the first 20 years after the Contitution goes into effect, which period has not yet expired, all laws passed by the Legislature shall be published both in the English and Spanish languages. It is argued that, since chapter 118 does not set out either within itself or as an appendix thereto, the portions of the National Prohibition Act adopted therein by reference, this constitutional provision requires not only that the law as enacted, but that the portions of the National Prohibition Act, included therein by reference only, must be published in Spanish as well as in English. Appellant makes a very able and earnest argument in support of his contention. A sufficient answer to this argument is that there is another constitutional provision which determines this question. Section 23 of article 4 provides that:

"All laws shall go into effect ninety days after the adjournment of the Legislature enacting them, except general appropriation laws, which shall go into effect immediately upon their passage and approval. Any act necessary for the preservation of the public peace, health or safety, shall take effect immediately upon its passage and approval. provided it be passed by two-thirds vote of each house and such necessity be stated in separate section."

It will thus be seen that the laws enacted by the Legislature become effective upon certain fixed dates after the adjournment of the Legislature, or after their passage, whether published or not, and therefore the publication of these laws, though also required by the Constitution, is not a condition precedent to their effective operation.

The inhabitants of this state, whether English-speaking or Spanish-speaking, are presumed to know all previously adopted laws of this state and of the United States having general operation within this state, and therefore those of the National Prohibition Act. The burden of determining the provisions of other laws adopted therein by reference statutes is placed upon all alike, even though it may bear more heavily upon some than upon others. The constitutional provision requiring publication in English and in Spanish applies only to the laws in the form in which they are enacted. If, therefore, reference statutes are a valid and constitutional form of enactment, this constitutional provision is satisfied when they are published in the form in which they were passed and adopted by the Legislature. We therefore conclude that chapter 118 does not violate the provision of our Constitution relative to the publication of all laws in both English and Spanish.

[8] 5. The fifth constitutional objection is that the rules of conduct as contained in "title 2" have not been enrolled and engrossed, and read publicly in full in each house, and the said rules of conduct are not deposited with the secretary of state as required by sections 20 and 22 of article 4 of the Constitution of New Mexico. While all the states have constitutional provisions similar to the above, none has ever held them to apply to portions of other statutes adopted in a reference statute. These sections refer only to the acts of the Legislature as passed, and, since reference statutes are constitutional and a legitimate method of legislation, it can no more be held that these constitutional provisions required the reading, engrossing, or depositing with the secretary of state of the portions of other statutes adopted by reference, than that the other constitutional provision in reference to revising, amending, extending, etc., requires such portions of the statutes adopted to be set out in full in the reference statutes adopting them. For these reasons, we think there is no merit in the contention that the failure to have the sections of the National Prohibition Act referred to as part of chapter 118, engrossed, read,

or deposited with the secretary of state, renders this statute void.

From what we have hereinbefore said, it will be seen that the court did not err in refusing to sustain appellant's motion to quash the indictment, and the judgment of the court below is affirmed; and it is so ordered

PARKER, C. J., and BOTTS, J. We have concluded to concur in the result reached in the foregoing opinion. We do so with grave doubts as to its correctness. But, owing to the fact that Judge FORT, who has so carefully considered the case, will this day retire from the bench by reason of the expiration of his term, we have concluded that it will be best to hand down the opinion, leaving the matter open for correction on rehearing, if motion therefor shall be filed.

### On Rehearing.

WATSON, J. Because of the circumstance mentioned in the foregoing concurring opinion, the court did not have opportunity in this case for that mature consideration and deliberation which its importance merits. For that reason, and because of the changed personnel of the court, a full rehearing and reconsideration were deemed proper.

The most important question presented is whether sections 1 and 2, c. 118, Laws of 1923, whereby the Legislature attempted to adopt as the law of this state the penal provisions of the National Prohibition Act (U. S. Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), constitute a violation of section 18, art. 4 of the Constitution of this state, which provides:

"No law shall be revised or amended, or the provisions thereof extended by reference to its title only; but each section thereof as revised, amended or extended shall be set out in full."

However difficult may be the solution of that problem, its statement is simple. Does the act in question extend the provisions of a law by reference to its title

only, and without setting them out in full, within the true meaning and intent of this constitutional limitation? The correct attitude in approaching the question is well understood. The Legislature is a co-ordinate branch of our state government. Its prerogative in the matter of legislation is to be questioned solely from the standpoint of our federal or state constitutional limitations. The function of the courts in scrutinizing acts of the Legislature is not to raise possible doubt nor to listen to captious criticism. The Legislature possessing the sole power of enacting law, it will not be presumed that the people have intended to limit its power or practice by unreasonable or arbitrary restrictions. Every presumption is ordinarily to be indulged in favor of the validity and regularity of legislative acts and procedure. We therefore approach the task predisposed, not only in favor of our original conclusions, but in favor of the validity of our legislation. Yet if, after full consideration of the true intent and meaning of the constitutional limitation here involved, we cannot acquit sections 1 and 2 of a violation of the Constitution, it is our clear duty to sustain the integrity of the Constitution. These principles are too well established and generally understood to require more than this reference.

The original conclusion by this court was thus stated:

"That the constitutional provision in New Mexico applies only to laws which, by their terms or necessary implication revise, amend or extend the provisions of other laws, thereby changing the original law by such amendment or extension, and do not refer to the enactment of a new law complete in itself except that, for the purpose of definitions or otherwise, it refers to provisions of an act of Congress by name and does not set out in full the provisions of each act so referred to and adopted."

This conclusion seems to have been reached upon the reasoning and authority of certain decisions which treat of so-called "reference statutes," and hold such statutes not violative of the particular constitutional limitation in force in the jurisdiction. To say that a "reference statute"—making new law by reference to

old law—does not violate a restriction upon extending the provisions of exsiting law by reference to its title only, and without setting such provisions out in full, seems at first view to involve a clear contradiction. This suggests the inquiry whether the act in question has been sufficiently identified as a true ''reference statute.'' It seems, also, that, if the Legislature may incorporate into the laws of this state a large body of penal laws enacted by Congress, it may, in like manner, incorporate, by mere references, and extend to this state, the provisions of any other law of Congress or of a sister state. If that be permissable, then it would seem that the people have not meant what the language they have incorporated into their Constitution clearly imports. These are the difficulties which we feel must be met before we can sustain our former conclusion.

As pointed out in the first opinion, nine states now have constitutional provision similar to the one in question. A somewhat larger number of states have constitutional restrictions upon the revision, reviving or amending of laws by reference to their title only, but not containing our restriction upon extending the provisions of laws by reference to title only. This suggests, of course, that our provision is broader and more restrictive than that of the majority of the states, and leads us to inquire whether the distinction is to have a bearing in applying to this case the decisions rendered in other jurisdictions where the constitutional limitation is narrower. The opinion also sets forth the constitutional limitations of New York and New Jersey, which are perhaps as restrictive as our own.

A reading of the decisions cited in the opinion discloses that the leading case relied upon is People v. Mahaney, 13 Mich. 481, which was decided in 1865, and, as we shall show, before any state had incorporated in its Constitution the provision against "extension statutes." In that case, the opinion written by the eminent Judge Cooley upheld ''An act to establish a police government for the city of Detroit,'' in which it was provided that:

"The offices of city marshal and assistant marshal of the
city of Detroit are hereby abolished, and the duties of said
offices shall hereafter be performed by the superintendent
of police, or by the captains and sergeants of police, under
his direction, in accordance with the provisions of this act."
Laws Mich. 1865, p. 99.

This provision was attacked as violative of the con-
stitutional restriction that:

"No law shall be revised, altered or amended by refer-
ence to its title only; but the act revised, and the section
or sections of the act altered or amended, shall be re-enact-
ed and published at length."

It is there pointed out that the statute did not as-
sume, in terms, to revise, alter, or amend any prior act
or section, and that any modifying or amendatory ef-
fect was arrived at by implication. The absurdity of
holding the contitutional restriction applicable to such
cases was thus shown:

"If, whenever a new statute is passed, it is necessary that
all prior statutes, modified by it by implication should be
re-enacted and published at length as modified, then a
large portion of the whole code of laws of the state would
require to be republished at every session, and parts of it
several times over, until, from mere immensity of material,
it would be impossible to tell what the law was."

Such a restriction upon the power and practice of the
Legislature, it was held, "must receive a reasonable
construction, with a view to give it effect." Such a rea-
sonable construction, we may infer, required the court
to keep in mind the sound purpose of the provision and
the existing or anticipated evil to be overcome or avoid-
ed, for the court proceeded thus:

"The mischief designed to be remedied was the enactment
of amendatory statutes in terms so blind that legislators
themselves were sometimes deceived in regard to their ef-
fect, and the public, from the difficulty in making the nec-
essary examination and comparison, failed to become ap-
prised of the changes made in the laws. An amendatory
act which purported only to insert certain words, or to
substitute one phrase for another in an act or section
which was only referred to but not re-published was well
calculated to mislead the careless as to its effect, and was,
perhaps sometimes drawn in that form for that express
purpose. Endless confusion was thus introduced into the
law, and the Constitution wisely prohibited such legislation.
But an act complete in itself is not within the mischief

designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent."

That these .principles are sound and the decision right we have no doubt. It has been approved wherever the same question has been raised. Judge Cooley, however, was considering a constitutional restriction quite different in its terms from ours; a fact which, it seems to us, has been sometimes overlooked by courts relying upon State v. Mahaney as authority, resulting in whatever confusion exists in the decisions upon the question we are now considering.

As above suggested, when State v. Mahaney was decided in 1865, no such limitation as ours appeared in any state Constitution. Apparently the .first states to adopt this provision were Arkansas and Pennsylvania. Arkansas incorporated it in its new Constitution of 1874 to replace a provision similar to Michigan's in its Constitution of 1868. Pennsylvania included it in its Constitution of 1873, having, apparently, had no prior restriction of the kind. New York adopted the restriction in 1874 by amendment of its Constitution of 1846, and New Jersey in 1875 by amendment to its Constitution of 1844. Alabama, in· its Constitution of 1867, had a provision similar to Michigan's, but replaced it by its present provision, similar to ours, in its Constitution of 1875. Colorado adopted it in its original Constitution of 1876; Montana, Wyoming, and North Dakota in their original Constitutions of 1889; Kentucky, having apparently had no prior restriction, adopted its present restriction, similar to ours, in its new Constitution of 1890; and Oklahoma included it in its original Constitution of 1907.

It thus appears that, about 1873, the people of a number of states became alive to the necessity for further limiting the power of the Legislature, and that the tendency so to do has been, from that time on, somewhat marked. If required to give a reason for these changes introduced, one would be likely to conclude that it was because such provisions as that of Michigan as construed by the courts, were not deemed

sufficient to carry out the broad purpose of such restriction, and to prevent the mischief existing and anticipated from certain legislative practices.

In Denver Circle R. Co. v. Nestor, 10 Colo. 403, 15 P. 714 ,it was at once recognized that, by these changes in the Constitutions, further restriction had been placed upon legislative practice. It fully approves the principles set forth in State v. Mahaney, supra, but remarks that the new restrictions "go further" than the old, and "extend to cases of amendments by implication." Whether that court was correct in saying that the new restrictions went to amendments by implication we need not consider, but we are led to inquire wherein the new restriction differs from the old.

A striking case is Watkins v. Eureka Springs, 49 Ark. 131, 4 S. W. 384, where the court was considering an act which, by its first section, authorized the county court of any county, or the municipal authorities of any city, to call in outstanding scrip or warrants for the purpose of cancellation and reissue; by its second section provided:

"That the law governing such proceedings in a county shall apply with equal force to cities and incorporated towns. The council, recorder and marshall shall perform the duties laid down for the county court, the clerk and sheriff, respectively."

—by its third section provided that said court or council should thoroughly examine the present scrip or warrants and reject all such as they were not justly and legally bound to pay; and by its fourth section provided:

"That the law now in force governing in cases where counties are authorized to call in their floating indebtedness, shall apply and govern in proceedings had by counties, cities or incorporated towns."

The first and third sections were held unobjectionable, because "they conferred upon cities, counties, and towns alike the power to call in their outstanding indebtedness in direct terms, and not by reference to any act." As to the second section, it was said that:

"It adopts the method of procedure provided for like cases where counties are concerned without re-enacting the governing provisions. We are not, however, prepared to assert that when a new right is conferred or cause of action given, the provision of the Constitution quoted requires the whole law governing the remedy to be re-enacted in order to enable the courts to effect its enforcement."

In support of this holding, the same principles were invoked as in State v. Mahaney, supra. But when the court came to the fourth section, it encountered a quite different situation, which it dealt with as follows:

"The fourth section of the act undertakes, however, to extend the positive provisions of the law applicable to the calling in evidence of indebtedness by counties, to cities and towns, by a general reference to the prior law. The chief and most effective of these is the provision barring a recovery if the holder fails to present the evidence of his debt for reissue. Mansf. Dig. § 1149. Without this provision the act is of little utility. But can the operation of the provision be extended or the power given by it conferred upon cities, by a general reference to the former law? We apprehend that it was just this sort of blind legislation the Constitution intends to prohibit when it says the provisions of a law shall not be 'extended or conferred' without 're-enacting' the part 'extended or conferred.' It may be that no legislator was misled by this act or failed to perceive all that it was desired it should accomplish. Of that we have no means of judging. It is sufficient that the Constitution renders such an effort at legislation unavailing. It does not permit the intelligent duty of legislation to be performed like the devotions of the christian who was content to point to the lids of a sealed book as containing his prayers and expressing his sentiments."

The distinction drawn in this case is very clear. The restriction was construed so as not unreasonably and unnecessarily to hamper the Legislature in its work, but to sustain the Constitution in its plain intent that an act should contain, upon its face, so much that legislators might know, from inspecting it, the true import of that upon which they were to vote, and that citizens might know, from inspecting it in its completed form, of what substantial rights they were thereby invested or divested. So construed, a reference to prior existing law concerning mere methods of procedure was not objectionable, and not intended to be prohibited, but such a reference for the determination of positive and

substantial rights conferred or taken away could not be sustained. This distinction does not seem to have been given weight in the opinion first handed down. It has been ignored in some of the decisions therein cited. If it be a true distinction, it seems likely to be controlling in this case. This distinction we shall hereinafter refer to, for convenience, as the Arkansas rule, and it will be our purpose now to ascertain to what extent that rule finds support in the decisions of the various states whose Constitutions contain a provision similar to ours.

A recent application of the Arkansas rule, by the same court, is found in Farris v. Wright, 158 Ark. 519, 250 S. W. 889, in which the constitutionality of the following statute was in question:

"The estate of courtesy is hereby abolished, and hereafter, upon the death of a married woman, her surviving husband shall have in her estate the same interest that the wife has in the estate of the husband upon his death under the laws of this state."

This statute was declared void. The court noticed all prior decisions of that jurisdiction, and thus stated the Arkansas rule:

"This court has often considered the application and effect of this provision of the Constitution, and in each instance has adhered to the rule that 'when a new right is conferred or cause of action given, the provisions of the Constitution quoted require the whole law governing the remedy to be re-enacted in order to enable the court to effect its enforcement,' but that if the statute is original in form, and by its own language grants some power, confers some right or creates some burden or obligations, it is not in conflict with the Constitution, although it may refer to some other existing statute for the purpose of pointing out the procedure in executing the power, enforcing the right, or discharging the burden.'"

In considering how to classify the statute in question, the court said:

'The statute plainly confers not a mere remedy or method of procedure for enforcing a right, but it undertakes to confer a substantive right or interest. The state undertakes, in other words, to provide an interest which the surviving husband shall have in the estate of his wife upon the latter's death. This is a right or interest sought to

be vested, and not a remedy or procedure to be adopted in securing a declared right."

In White v. Loughborough, 125 Ark. 57, 188 S. W. 10, and in Poe v. Street Imp. Dist. 159 Ark. 569, 252 S. W. 616, this rule was clearly set forth and adhered to, although the facts of those cases permitted the court to sustain the legislation under attack. Common School District v. Oak Grove Special School District, 102 Ark. 411, 144 S. W. 224; State v. McKinley, 120 Ark. 165, 179 S. W. 181, and House v. Road Imp. Dist., 154 Ark. 218, 242 S. W. 68, read in the light of these other decisions, and of the facts involved, do not, in our judgment, indicate any departure from the Arkansas rule.

In St. Louis & San Francisco R. Co. v. S. W. Tel. & Tel. Co., 121 F. 276, 58 C. C. A. 198, the Circuit Court of Appeals of the Eighth Circuit, in an opinion by Judge Sanborn, considering an Arkansas statute giving to telephone and telegraph companies the right to condemn rights of way "in the manner prescribed by law for taking private property for right of way for railroads as provided by sections 5458 to 5467, both inclusive, of the Revised Statutes of Arkansas 1884," succinctly stated the rule thus:

"While section 23, art. 5, of the Constitution of Arkansas, limits legislation which grants, modifies, or destroys the rights of parties, it has no application to legislation which simply affects remedies and methods of procedure."

Most of the cases in Oklahoma have to do merely with statutes attempting to amend former law by reference to title only. In City of Pond Creek v. Haskell, 21 Okla. 711, 97 P. 338, it was contended that this provision of the Constitution was violated by a statute which conferred upon counties the right to hold a special election for the purpose of selecting a permanent location for a county seat, and referred to the general election laws of the state for the procedure to be followed. In considering this contention the court reviewed many decisions, and quoted, with apparent approval, St. Louis & San Francisco R. Co. v. S. W. Tel. & Tel. Co., supra.

The only Colorado decision necessary to notice is Denver Circle R. Co. v. Nestor, supra. In that case, in upholding a statute in which reference was made to former statute in matters of practice and procedure, the court said that the clause of the Constitution in question was not intended "to apply alike to all legislative enactments, including those wherein a reference to the general laws becomes necessary for the means of enforcing and carrying their provisions into effect," and quoted from People v. Banks, 67 N. Y. 568, the following excerpt:

"The right is given, the duty declared, or burden imposed by the special statute, but the enforcement of the right or duty, and the final imposition of the burden are directed to be in the form and by the procedure of the other and general laws of the state. Reference is made to such laws, not to affect and qualify the substance of the legislation, and vary the terms of the act, but merely for the formal execution of the law."

The opinion, as a whole, we consider entirely in harmony with, and as a recognition of, the Arkansas rule.

In Spratt v. Helena Transmission Co., 37 Mont. 60, 94 P. 631, the statute in question extended to foreign corporations authorized to do business in the state the right to "acquire real property as provided in the Code of Civil Procedure, title VII, part III, to the same extent, for the same purposes, and in the same manner as corporations, organized under the laws of this state." Laws, Mont. 1907, c. 23. After reviewing a large number of authorities, the court attempted to formulate a rule in this language:

"While it is difficult to state a rule which will apply in every case, it is believed that it may be said safely that, if the act under consideration in the particular case is original in form, if by its own language it 'grants some power, confers some right, or creates some burden or obligation, it is not in conflict with the constitutional provision,' although it may refer to some other existing statute 'for the purpose of pointing out the procedure, or some administrative detail necessary for the execution of the power, the enforcement of the right, the proper performance of the duty, or the discharge of the burden or obligation.' "

We find no departure from this rule, either in King

v. Pony Gold Min. Co. 24 Mont. 470, 62 P. 783, or State
v. Centennial Brewing Co., 55 Mont. 500, 179 P. 296.

In Bay Shell Road Co. v. O'Donnell, 87 Ala. 376, 6
So. 119, the act under consideration "for the protec-
tion of life and property upon the Bay shell road," pro-
vided:

"That it shall be unlawful for any person to allow any
loose animal belonging to them to run at large upon said
Bay shell road, and any animal running at large on said
road may be, by any officer or employee of said Bay Shell
Road Company, taken up and estrayed in the manner as
is provided by article 1, c. 7, tit. 13, pt. 1 of the Code of
Alabama."

The court said:

"The purpose of the constitutional requirement was to
have each bill considered by the General Assembly in and of
itself present the full score, operation and effect of the
proposed law, so that members might know and intelligently
consider the details of every measure, and vote neither aye
nor nay 'in blind ignorance of its provisions, or even in
trusting confidence to the representations of others.'

"It would be difficult to conceive a more effective method
of defeating this important and salutory purpose, than that
adopted in this statute, by which the legislature attempted
to amend, extend and confer all the provisions of an intri-
cate and important statute, by a general reference to the
subject-matter of that law, and to the book and page where
it is published at length. So much of the act, therefore, as
attempts to give the right to 'estray' animals found running
at large on the Bay Shell Road, is unconstitutional and
void."

Laws seeking to extend by reference the territorial
application of local laws have been uniformly held void
in Alabama. Stewart v. Court of County Commission-
ers, 82 Ala. 209, 2 So. 270; Barnhill v. Teague, 96 Ala.
207, 11 So. 444; Street v. Hooten, 131 Ala. 492, 32 So.
580. See also, Bolling & Son (v. Le Grand, 87 Ala. 482,
6 So. 332, Maxwell v. State, 89 Ala. 150, 7 So. 824, and
Miller v. Berry, 101 Ala. 531, 14 So. 655.

In State ex rel. v. Rogers, 107 Ala. 444, 19, So. 909,
32 L. R. A. 520, the court was considering "An act to
establish a board of revenue for Lowndes county and
define the powers and duties of said board of revenue

(Laws Ala. 1894-95, p. 186)''; which act so changed
the board as to consist of five members instead of four
as formerly, and declared that the board, as changed,
should ''have and continue in the exercise of all the
powers and duties now conferred or thereafter con-
ferred on them by law.'' The court held this legislation
valid on the ground that it was original in form and in
itself intelligible and complete. It is apparent that it
was the amending, rather than the extending feature
of the constitutional limitation which the court was
considering. It is also apparent, from the failure to
mention them, that the court did not conceive that it
was departing from its former holdings. In the course
of the opinion it quotes the excerpt above quoted from
People v. Banks, supra, which accurately states the
Arkansas rule.

In the latter case of Rice v. Westcott, 108 Ala. 353,
18 So. 844, the court said:

"The third section of the act, entitled, 'An act, to amend
an act entitled an act to provide for the registration and lien
of judgments and decrees for the payment of money,'
* * * which seeks to extend 'the laws relating to the entry
of credits and satisfaction of mortgages,' to the 'entry of
credits and satisfaction of the liens created by this act,'
clearly offends both these constitutional limitations,"

—referring to the constitutional provisions as to the
title of an act, and as to reviving, amending, or ex-
tending the provisions of an act by reference to its title
only.

In Birmingham Union R. Co. v. Elyton Land Co.,
114 Ala. 70, 21 So. 314, the act under consideration pro-
vided:

"Street railroad companies organized and incorporated un-
der the laws of Alabama, may acquire by gift, purchase or
condemnation, real estate in this state, for the right of way
of street railroads, a strip, tract or parcel of land, not exceed-
ing thirty feet in width, for the right of way for said street
railroads, and said street railroad companies shall have the
right to condemn and take possession of said land, on pay-
ment to the owner thereof, a just compensation, in the same
manner as now provided by law for taking private property
for railroads and other public uses, in article 2, c. 17, tit. 2,
pt. 3 of the Code."

McClellan, J., writing the opinion, said it seemed to him that the statute was void under Bay Shell Road Co. v. O'Donnell, supra, but that his associates entertained a different view under State v. Rogers, supra. While this decision may mark a departure of the Alabama Supreme Court from its former strict construction of the constitutional limitation, it is clearly not in conflict with the Arkansas rule. The right in question was clearly and explicitly granted by the statute. The reference was merely for the purpose of ascertaining the procedure by which the conferred right was to be effectuated.

Phoenix Assurance Co. of London v. Fire Department, 117 Ala. 631, 23 So. 843, 42 L. R. A. 468, is a much cited case. It is to be noted, however, that the statute, the validity of which was there upheld, was passed under the old Constitution of 1868, which, as seen, contained no restriction upon the extension of the provisions of an act.

The only Alabama decision which we consider at all questionable under the Arkansas rule is Cobb v. Vary, 120 Ala. 263, 24 So. 442, where the statute under consideration provided that lands sold for taxes and bid in for the state, if not redeemed within two years, should become the property of the state. It provided for their sale and conveyance by the state to purchasers. Section 8 provided:

"That purchasers under this act, are authorized to take possession of lands described in their respective deeds, where the same are not held adversely, and are authorized to bring suit to recover such lands where held adversely. In cases of litigaiton to recover or defend possession acquired under such deeds, the parties to such suits shall have all the rights and rest under all the disabilities given and imposed by sections 597, 600, 601, 602, 603, of the Code of Alabama." Laws 1894-95 Ala. p. 491.

We have examined those sections of the Alabama Code, and while in the main, they seem to deal with procedural questions, we hesitate to say that substantial rights are not therein created, and thus, by the act in question, extended by reference. The case would

seem to be on the border line of distinction. We judge, however, that the court considered the sections referred to as being procedural only, because the writer of the syllabus, after stating that an act in form original, and in itself intelligible and complete, does not offend against the constitutional limitation, concludes thus:

"And this is true where such act seeks to effectuate the rights conferred, by referring to certain sections of the Code as furnishing means necessary for their enforcement."

We do not think, therefore, that the court in this case intended any departure from the Arkansas rule, which it had recognized in State ex rel. v. Rogers, supra. The later cases of Beason v. Shaw, 148 Ala. 544, 42 So. 611, 18 L. R. A. (N. S.) 566, and Savage v. Wallace, 165 Ala. 572, 51 So. 605, are, in our judgment entirely consistent with it.

We have reviewed the Alabama decisions thus at length because of their illustrative character, and because they have been so often cited and relied upon. We shall not lengthen this opinion by reviewing the Pennsylvania decisions in the same manner. Illustrative cases, where statutes have been held void under the constitutional provision, are Titusville Iron Works Co. v. Keystone Oil Co., 122 Pa. 627, 15 A. 917, 1 L. R. A. 361; Pittsburg's Petition, 138 Pa. 401, 21 A. 757, 759, 761; Norristown v. Norristown Pass. R. Co., 148 Pa. 87, 23 A. 1060; Commonwealth v. J——, 21 Pa. Co. Ct. 625. Clearfield County v. Cameron Tp. Poor D., 135 Pa. 86, 19 A. 952, sometimes cited, dealt with a statute enacted before the change in the Constitution. The later decisions of Greenfield Ave. Pittsburgh's Appeal, 191 Pa. 290, 43 A. 225, James Smith Woolen Machinery Co. v. Browne, 206 Pa. 543, 56 A. 43, Guenthoer's Estate, 235 Pa. 67, 83 A. 617, and McKeown's Petition, 237 Pa 626, 85 A. 1085, perhaps indicate a somewhat more liberal policy in construing the constitutional provision, but are, in our judgment, quite consistent with the Arkansas rule. The late case of Commonwealth v Alderman, 275 Pa. 483, 119 A. 551, perhaps merits

fuller consideration. There the Legislature, in adopt-
ing its Prohibition Law, provided that intoxicating liq-
uor should mean "anything found and determined,
from time to time, to be intoxicating by act of Con-
gress passed pursuant to, and in the enforcement of,
the Constitution of the United States." The court held
that such would have been in Pennsylvania the definí-
tion of intoxicating liquor without the reference com-
plained of, and that the reference was surplusage, cit-
ing National Prohibition Case, 253 U. S. 350, 386, 387,
40 S. Ct. 486, 488, 64 L. Ed. 946, and Commonweath v.
Nickerson, 236 Mass. 281, 292, 296, 128 N. E. 273, 277,
279, 10 L. R. A. 1568. Following this very doubtful prop-
osition, it quotes : "No act can be rendered unconstitu-
tional by a section which makes no change whatever in
the law as it was before and which might have been
omitted without any effect whatever"—and says :
"This principle is applicable to the instant case and
governs it."

The court also held that the constitutional limitation
did not contemplate and was not intended to meet the
situation created by the adoption of the Eighteenth
Amendment, which gave concurrent power to Congress
and the states to enforce its provisions. To this con-
clusion we shall refer hereafter. Having reached these
determinative conclusions, the court indulged in some
discussion of the question before us ; but the discussion
seems quite inconclusive. It quoted and cited the Green
field Ave. Case and James Smith Woolen Machinery
Co. v. Browne, supra, which, as we have said, are not
inconsistent with the Arkansas rule, and Clearfield v.
Cameron, supra, which, as pointed out, did not arise
under the present constitutional provision.

From the comment in the original opinion upon the
New York and New Jersey decisions, it is apparent that
these states recognize and have announced the Arkan-
sas rule. In fact, the distinction is well illustrated by
comparing Campbell v. Board of Pharmacy, 45 N. J.
Law 241, with Christie v. Bayonne, 48 N. J. Law 407,
5 A. 805.

State v. Fargo Bottling Works Co., 19 N. D. 396, 124 N. W. 387, 26 L. R. A. (N. S.) 873, deals with a statute claimed to offend merely in that its effect was by implication to amend and modify existing law, and comes squarely within the principles invoked in State v. Mahaney, supra. We do not find that the Supreme Court of Wyoming has ever been called upon to construe its provision.

We now come to Lyman v. Ramey, 195 Ky. 223, 242 S. W. 21, which, in our former opinion, we characterized as "the most comprehensive case on the question here under review." The Legislature passed a law of two sections, the first of which authorized foreign fidelity or guaranty companies, having charter power to become surety, to carry on their business in Kentucky; and the second of which provided:

"That said companies shall comply with all provisions of law applicable to fire and marine insurance companies of other states, doing business in this state." Ky. St. § 724.

The "provisions of law" referred to constituted a comprehensive Code dealing with and regulating insurance companies generally, but not fidelity or guaranty companies. Among these regulations was one against the rebating of premiums. The appellant, an agent, had applied for a license, which was refused on the ground that his plan of carrying on his business constituted rebating. One of his contentions was that the second section of the statute was invalid because in conflict with the constitutional provision which we have under consideration. The court held that, if the second section should be held void, the whole act must be so held, because the Legislature, having adopted strict regulations for other insurance companies, could not be presumed to have intended to authorize fidelity and guaranty companies to do business in the state without regulation; and, as no other authority than the act in question was to be found under which such companies could be admitted to do business in the state, the applicant could not obtain the relief he sought even if his contention as to the constitutionality.

of the second section should be sustained. This, of course, sufficiently determined the case before it; but the court thereupon proceeded to discuss the contention, deciding it adversely. It cites Savage v. Wallace, State v. MvKinley, Denver Circle R. Co. v. Nestor, Christie v. Bayonne, supra, and People v. Banks, 67 N. Y. 568, all of which are, to say the least, consistent with the Arkansas rule. It cites State v. Mahaney, supra, and State v. Tausick, 64 Wash. 69, 116 P. 651, 35 L. R. A. (N. S.) 802, in which jurisdiction the constitutional provision does not prohibit extensions. It quotes 26 Amer. & Eng. Ency. of Law, p. 711, which is a perfect statement of the Arkansas rule. It seems to misinterpret In re Guenthoer's Estate, supra, which it assumes to hold "that this same rule obtains, not only in regard to reference statutes where the act adopts a prior procedural statute, but also where it adopts a statute affecting substantial rights." In that case, the distinction between procedural statutes adopted and those affecting substantial rights was not discussed or passed upon in considering the effect of the constitutional limitation, but only as it affected the proper construction of the statute there in question. Invoking State v. Tausick, supra, after noting that the Washington Constitution does not use the words "extend" and "confer," it remarks that it was intended to prevent the same legislative abuses; thus begging the question which we set for ourselves at the outset, namely, what additional restraint are the words "extend" or "confer," or both, intended to place on legislation?

Further analysis of this decision would not profit. In its facts it is not unlike Cobb v. Vary, supra. Considering the facts and the discussion, it is open to question whether the Kentucky court took ground against the Arkansas rule. Conceding that it did, the case is clearly distinguishable from the case at bar. The most that can be said for it is that it developed an additional exception, which might be stated thus: That an act creating a new right may refer to another act or body of

law for the conditions under which—as well as the procedure by which—such right may be effectuated. We are not prepared to say that this is not a permissible construction of the constitutional limitation; but it does not solve our problem, nor support the conclusion of the opinion first handed down.

The opinion quotes section 120, 25 R. C. L. p. 875, where the "reference statute" rule is so stated as to apply even under constitutional limitations such as ours. To that statement of the law, there are cited only Phoenix Assurance Co. of London v. Fire Dept., City of Montgomery, and State v. Tausick, which cases we have already noticed, and which do not support it. It refers to section 160 of the same article ("Statutes"), where it is said:

"When in one statute a reference is made to an existing law, in prescribing the rule or manner in which a particular thing shall be taken, or for purposes of ascertaining powers with which persons named in the referring statute shall be clothed, the effect generally is not to revive or continue in force the statute referred to for the purpose for which it was originally enacted, but merely for the purpose of carrying into execution the statute in which the reference is made."

The extent to which "reference statutes" are permissible under our form of restriction is better expressed in 26 Amer. & Eng. Ency. of Law, p. 710, as follows:

"The constitutions of several states declare that the provisions of an existing law shall not be extended or conferred by reference to its title only, but that so much thereof as is extended or conferred shall be re-enacted and published at length. Other Constitutions declare that no act shall be passed which shall provide that any existing law or part thereof shall be deemed a part of said act, except by inserting it therein.

"The Supreme Court of Colorado has said that a clause of this character goes further than the general constitutional provision about amendments, 'and extends to cases of amendments by implication;' but that it should not be taken to apply alike to all legislative enactments, for such a construction would be unreasonable and would impose more serious inconveniences than those sought to be remedied. Having regard to the argument from inconvenience, it should be enforced according to its reason and spirit and the evils against

which it was directed. The purpose of this clause has been said to be not to embarrass the Legislature in the enactment of laws, but to obtain a fair and intelligent exercise of the lawmaking power.

"Therefore, it is generally held that if an act is complete in itself, it may adopt rules of construction or modes of procedure for carrying out its provisions by reference to other statutes, whether or not this provision is contained in the Constitution; and such adoption by reference may include references to local as well as general laws. Statutes of this character are known as reference statutes."

The state places reliance upon Ex parte Burke, 190 Cal. 326, 212 P. 193. There, as pointed out in the original opinion, the court was considering the "Wright Act," substantially the same as, and undoubtedly the model for, our chapter 118. The "Wright Act" (St. 1921, Cal. p. 79), was upheld, the court saying:

"Wherever there is no constitutional provision which forbids it, it is proper to declare that any law of the Untied States, or of another state, shall be the law of this state. * * * "

With reference to this case, it is only necessary to note the language of the California Constitution:

"No law shall be revised or amended by reference to its title; but in such cases the act revised or section amended shall be re-enacted and published at length as revised or amended. "Const. art. 4, § 24."

Having now reviewed the authorities cited in the opinion, as well as others, we have developed nothing further than the Arkansas and Kentucky rules. In the light of these authorities, and of the principles therein established, we must now determine whether sections 1 and 2, c. 118, can stand. As said in substance in many of the cases, the purpose of such limitations as this (as well as of that, common to most of the states, that a statute shall contain but one subject or object, which shall be expressed in its title), is that statutes shall carry on their face sufficient that, by an inspection, their import may be known. This purpose is everywhere admitted to be salutary. It was to prevent evils broadly referred to as "blind legislation," manifested in a number of ways. Amendments were made by merely striking out or inserting a phrase or word.

Statutes repealed, and perhaps for that reason omitted from compilations, were revived by reference to title only. Existing laws or provisions of laws of the same other jurisdiction were adopted by mere reference. All of these legislative practices frustrated the broad purpose of these constitutional limitations and constituted "blind legislation." In developing the remedy, restriction was first placed upon reviving or amending, or revising or amending by reference to title only. This provision, as correctly construed by the courts, cured only some of the evils of "blind legislation." It did not touch "reference statues," for such did not amend, revise or revive. The existing law was left to operate just as it did before. Its scope was merely enlarged in one way or another. It requires no argument to demonstrate that courts have no power to restrict legislatvie practice, even by consulting the mischief intended to be avoided, by declaring an act void when the language of the Constitution does not make it so. To complete the remedy, the restriction upon extensions was inserted. Here was language broad enough to effectuate the purpose, but so broad as to lead, if literally followed, to absurd results in hampering legislation. So construction was properly resorted to, not to defeat the true purpose of the provision, but to give it a reasonable and practical application. Thus arose the Arkansas rule of distinction, and possibly the Kentucky rule. This is the distinction between Ex parte Burke, 190 Cal. 326, 212 P. 193, and the case at bar.

It is impossible to doubt that a statute denouncing crime, prescribing penalties involving loss of liberty and property, and branding the violator as a felon or misdemeanant, is one dealing with positive and substantial rights. That this is a flagrant case of blind legislation seems clear. It may be, as stated in Watkins v. Eureka Springs, supra, that "no legislator was misled by this act or failed to perceive all that it was desired it should accomplish." It may be that the people so well understood the National Prohibition Law that it would have been supererrogation to re-enact its

provisions as the law of this state.   But that is not the question. The courts are not left to inquire whether the Legislature or the people at large, or the party litigating, have been misled in a particular case.   They are given a general rule, the application of which is presumed best to meet all cases.   Of course, all are presumed to know—the law of limitations, the laws of curtesy and dower, the recording and lien laws, and the acts of Congress.   But, had the people been content to rest the case upon that presumption, there would have been no occasion to adopt the constitutional limitation in question. It is largely because of requirements making the law plain and accessible that such necessary presumption may be fairly indulged.

In Commonwealth v. Alderman, supra, an important conclusion was based, in part, upon the proposition that the Eighteenth Amendment, granting concurrent power to Congress and the state to legislate for its enforcement, was not contemplated when the constitutional limitation was adopted.   Upon this fact we are unable to base any distinction. The Eighteenth Amendment does not require this state, in the exercise of its concurrent power, to adopt the same legislative policy as Congress in its wisdom, may choose; nor does it require us to legislate at all.   In re Opinion of the Justices, 239 Mass. 606, 133 N. E. 453; Commonwealth v. Nickerson, 236 Mass. 281, 128 N. E. 273, 10 A. L. R. 1568; State v. Gauthier, 121 Me. 522, 118 A. 380, 26 A. L. R. 652. In fact,, we are controlled by a constitutional provision of our own more restrictive than the Eighteenth Amendment or the Volstead Act.   Constitutions lay down general principles.   They do not often deal with concrete situations.   They are made with an eye to the future.   It is our boast that the federal Constitution, framed in 1787, because of these facts, has been found sufficient, with infrequent amendment, to meet the changed conditions of the passing years.   It may be that in time federal jurisdiction will be so enlarged, with so many concurrent powers of Congress and the states, that our present constitutional restriction will

become burdensome. It may be that, as conditions have changed, and may change, by reason of improved communication, more accessible law books, and more widespread familiarity with law, our constitutional limitation may be thought to have served its purpose and to have become outworn. But it is for the people to change their Constitution; not for the courts to fritter it away.

[9] Other considerations suggest themselves, but we fear that the interest of the question and the importance of the case have already carried us too far. Being unable on any theory to reconcile sections 1 and 2, c. 118 of the Laws of 1923 with section 18, art. 4 of the Constitution, we are constrained to hold the former void. It results that the judgment must be reversed and the cause remanded, with direction that the accused be discharged; and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.